# Staunton.

## COMMONWEALTH OF VIRGINIA AND GILES COUNTY v. PEMBROKE LIMESTONE WORKS.

September 23, 1926.

1. TAXATION—*Double Assessments—Whether Tools, Etc., of Crusher Company Should be Assessed as Capital—Case at Bar.*—A corporation, whose principal office was in Roanoke, engaged in crushing stone, did not own the land in Giles county on which its crusher plant was located or on which the quarry was located from which the stone was obtained. The property of the corporation consisting of tools and machinery and fixtures of the plant was listed as "capital" invested in business. The commissioner of revenue for Giles county, however, insisted on assessing the property as machinery, tools and fixtures on mineral land. This resulted in the double assessment of the same property.

   *Held:* That no matter where assessed, the property was of such nature that the tax was payable in Giles county. The question was not where the property was located but how it was to be classified—whether as capital or as tangible personal property.

2. TAXATION—*Tools and Machinery and Buildings of a Crusher Company—Land Upon Which Situated not Owned by the Company.*—Where a crusher company owned no land in the county where its quarry and crusher were established, its buildings and fixtures, tools and machinery could not be assessed to it as improvements of real estate. So far as it was concerned they were tangible personal property.

3. TAXATION—*Assessment—Tools and Machinery of a Crusher Company Situated on Land not Owned by the Company—Case at Bar.*—Under section 8, cl. 2, of schedule C of the tax bill, the situs for taxation of the tools, machinery and fixtures of a crusher company situated on land not owned by the company, is the county or incorporated community in which they are physically located, but the return, when made by a firm or corporation, shall be to the commissioner of the revenue "wherein the principal offices of the partnership or corporation is located in this State." The section also provides the methods of taxation and the rate of tax on tangible property returned as capital and located in a city or county other than that in which the principal office is located.

   *Held:* That the provisions of the tax bill were complied with in the

instant case, as the property was correctly returned as capital and the tax was paid.

4. TAXATION—*Double Assessments—Whether Tools, Etc., of Crusher Company should be Assessed as Capital—Case at Bar.*—A corporation, whose principal office was in Roanoke, engaged in crushing stone, did not own the land in Giles county on which its crusher plant was located or on which the quarry was located from which the stone was obtained. The property of the corporation consisting of tools and machinery and fixtures of the plant was listed as "capital" invested in business. The commissioner of revenue for Giles county, however, insisted on assessing the property as machinery, tools and fixtures on mineral land. This resulted in the double assessment of the same property. Whether or not the property was correctly returned as capital involved the consideration of section 2234 of the Code of 1919, section 2298 of the Code of 1887, and tax bill, schedule C, sec. 8, page 2.

   *Held:* That the property involved came within the spirit and letter of "capital" as defined in the tax bill and was properly so returned.

5. TAXATION—*Erroneous Assessment—Application for Relief.*—The several sections of the Code relating to relief against erroneous assessments of property must be considered together.

6. TAXATION—*Erroneous Assessment—Application for Relief—Limitation of Action—Case at Bar.*—In the instant case, an application for relief against an erroneous assessment of taxes, the assessment was made during the year 1923, but the application for relief was not made until August 30, 1924, and there was a demurrer to the application on the ground that, under section 2237 of the Code of 1919, it should have been made before February 1, 1924. The application for relief alleged a double assessment of the same property, and that a proper single tax has been paid thereon, thus bringing the case within the provisions of section 2385 of the Code of 1919, and the trial court committed no error in overruling the demurrer thereto.

7. TRIAL—*Hearing Two Cases Together—Correction of Erroneous Tax Assessments—Discretion of Court.*—The instant cases were proceedings for the correction of erroneous tax assessments. The action of the trial court in hearing the two cases together was assigned as error. This was a matter resting in the discretion of the trial court, and no injury resulted, or could have resulted, to the plaintiffs in error from its action. The evidence was practically the same in both cases, and the trial court acted wisely in conserving its time.

8. TAXATION—*Correction of Erroneous Assessments—Increase of Value of Property Returned by Plaintiff.*—The instant cases were proceedings for relief against double assessments for taxation of plaintiff's property. The failure of the trial court to increase the value of the property returned as capital by plaintiff was assigned as error.

   *Held:* That if it be conceded that the trial court had the power to do

so, there was no error in its refusal as the preponderance of evidence was against such increase.

9. Taxation—*Correction of Erroneous Assessments—Increase of Value of Property Returned by Plaintiff—Evidence—Capitalization.*—In the instant cases, proceedings for correction of erroneous assessments for taxes, much was made of the capitalization of plaintiff corporation at $500,000. The stock was issued to the former owners of the property and none of it had been offered on the market. In fixing the value of the property for taxation, it was not claimed that it was worth anything like $500,000.

*Held:* That the capitalization furnished no guide for valuation for purposes of taxation.

Error to a judgment of the Circuit Court of Giles county, in a proceeding for relief from double assessments of property for taxation. Judgment for plaintiff. Defendant assigns error.

*Affirmed.*

The opinion states the case.

*Martin Williams, W. B. Snidow* and *John R. Saunders, Attorney General, Leon M. Bazile* and *Lewis H. Machen, Assistant Attorneys General,* for the plaintiff in error.

*Hall & Buford* and *M. P. Farrier,* for the defendant in error.

Burks, J., delivered the opinion of the court.

There are two plaintiffs in error. Separate judgments were rendered against them, respectively, on separate applications to be relieved from double assessments on their property, respectively, but as the points involved in each and the evidence to support them were practically the same, they were heard at the same time by the trial court, and a single writ of error was awarded by this court, and the case has been heard here upon a single record giving the proceedings in each case.

No objection was made to the mode of procedure in this court.

The Pembroke Limestone Works was a partnership composed of W. W. Boxley and others, with their principal office in Roanoke, Virginia, and operating a stone crushing business on a large scale at Pembroke, Giles county, Virginia. On July 1, 1923, they incorporated their business under the name of Pembroke Limestone Corporation and issued stock to each partner in proportion to his holding in the former partnership. The principal office of the corporation was in Roanoke, Virginia. The partnership owned no real estate in Giles county.

In 1912, W. W. Boxley & Co., the predecessor in title of the partnership, entered into a contract with the Norfolk and Western Railway Company, whereby the latter granted to the former the possession "of such portions of the property owned or controlled by it as is necessary for the purpose of constructing and operating a ballast crusher," at Pembroke, and W. W. Boxley & Co. agreed "to erect crusher plant complete," and to furnish to the railroad company a designated quantity of crushed stone, at an agreed price, each year for a period of five years. W. W. Boxley & Co. erected the plant on the lands of the railroad company, secured from a third party the right to obtain stone, on a royalty basis, from a nearby quarry, and fulfilled the contract aforesaid. In July, 1917, W. W. Boxley & Co. made a new contract with 'the railroad company, upon substantially similar terms, for the "current season ending November 1, 1917." This contract was assigned by W. W. Boxley & Co. to the Pembroke Limestone Corporation on the_____ day of_____, 1923. The contract for 1924 was made March 15, 1924, between the Pembroke

Limestone Corporation of the first part and the Norfolk and Western Railway Company of the second part, and contained provisions similar to those of the contract of 1917. It was to "remain in force for a period of (1) one year from April 1, 1924." The Pembroke Limestone Corporation did not own the land either on which the crusher plant was located or on which the quarry was located from which the stone was obtained.

Prior to 1922 the property of the partnership consisting of the tools and machinery of the plant was assessed by the commissioner of the revenue of Giles county, in conjunction with the mineral assessor, without objection on the part of the partnership, and listed for taxation on the mineral sheets and the land books, and the taxes paid in Giles county.

In 1922 the examiner of records for Giles county called the attention of the partnership to the fact that its property should be listed as capital invested in business. The partnership referred the matter to their counsel, and the matter was taken up with the Auditor of Public Accounts, who referred it to counsel for the Tax Board. The matter was investigated, and counsel for the partnership and for the Tax Board concurred in the opinion that the property should be listed as "capital" and it was accordingly so listed by the partnership for the year 1923, and by the corporation for the year 1924, and the taxes, assessed according to law on "capital," for each of said years was duly paid. The commissioner of the revenue for Giles county, however, insisted on assessing the property as machinery, tools and fixtures on mineral lands, and accordingly so entered it on the mineral sheets of his land book. This resulted in a double assessment of the same property. Thereupon the partnership, on August 30, 1924, filed an application in the Circuit Court of

Giles county for relief against the double assessment of its property for the year 1923, and the corporation filed a like application on the same day, in the same court, for relief from the double assessment of its property for the year 1924. The court heard the two applications at the same time over the objections of the defendants, but entered a separate judgment in each case.

There was a demurrer to the petition for relief of the partnership on the ground that it was not filed within the time prescribed by law, which demurrer was overruled.

[1] There are several assignments of error, but the controlling question in the case is whether the property should be assessed as "capital," or as machinery, tools, fixtures, etc., located on mineral lands. There was much discussion as to *where* the property should be taxed, but we regard that as immaterial as no matter where assessed, the property is of such nature that the tax is payable in Giles county. The question is not where the property is located, but how is it to be classified, whether as "capital" or as tangible personal property. It is conceded that it cannot be taxed as real estate.

The property involved consisted of machinery, tools and other property necessary for the operation of the plant. How much of the property was located at the quarry does not appear from the record. The tangible personal property consists of steam shovels, drills, dinkey engines, crushers, screens, belts, induction motors, pumps, pipes and the like. There were also embraced in the assessment the building in which the crushing machinery was operated, a number of temporary shanties for the use of operatives and a small office building of cheap construction. All of these

structures are on the property leased from the Norfolk and Western Railway Company, and are used solely for the operation of the plant. The crusher buildings are on heavy concrete foundations and could not be dismantled and re-erected. They would not be worth pulling down. The shanties, if pulled down, would be of no value except for kindling wood. They are not rented except to operatives while the plant is being operated, and even then at a rent so low as not to produce any income. There is a track from the plant to the quarry, but the rails belong to the Norfolk and Western Railway Company. The tangible personal property returned embraced all plant machinery, steam shovels, locomotives, cars and all machinery and equipment used for crushing stone at the crushing plant and in the quarry.

The contract with the Norfolk and Western Railway Company contains no express clause allowing removal of buildings or machinery on the termination of the lease.

[2] As neither the partnership nor the corporation owned any land in Giles county, the buildings and fixtures could not be charged to them as improvements of real estate. So far as they are concerned it is tangible personal estate.

[3] Section 8, clause second, schedule C of the tax bill (Acts 1922, c. 332), so far as necessary is quoted in the margin.*

---

*"All capital of persons, firms and corporations employed in a trade or business not otherwise taxed; and in case of a corporation when all of such capital is taxed by this State, the shares of its stock in the hands of individual shareholders shall not be further taxed for State purposes. But real estate belonging to such persons, firms and corporations shall not be held to be capital, but shall be listed and taxed as real estate.

"Capital as used in the tax laws shall be defined as follows:

"(1) The inventory of stock on hand, which shall include all raw materials for use of the business, whether at the place of business, in storage or elsewhere in the State.

"(2) The excess of bills and accounts receivable over bills and accounts payable.

The section provides that the situs for taxation of property such as is here involved, when returned as capital, shall be "the county or incorporated community in which they are physically located," but that the return, when made by a firm or corporation, shall be to the commissioner of the revenue "wherein the principal office of the partnership or corporation is located in this State." The section also provides the methods of taxation and the rate of tax on tangible property returned as capital and located in a city or county other than that in which the principal office is located. These provisions of the tax bill have been complied with, if the property was correctly returned as capital and the tax has been paid.

[4] Whether or not the property was correctly returned as capital involves the consideration of several statutes which must be construed together. Section 2234 of the Code declares that "the several commissioners of the revenue of this State shall, on or before the fifteenth day of May of each year, specially and separately assess at the fair market value all mineral lands and the improvements, fixtures and machinery thereon, and shall enter the same on the land books of their respective districts separately from other lands charged thereon, and shall extend the taxes upon said lands, improvements, fixtures and machinery, at the rate fixed by law upon tangible property.

"The commissioner, in assessing mineral lands, shall set forth upon the land book the area and the fair market value thereof, first, of such portion of each tract as is improved and under development; second,

"(3)   All machinery and tools not taxed as real estate.
"(4)   Money on hand and on deposit.
"(5)   All other property of any kind whatsoever, including all choses in action, equities, demands and claims."

the fair market value of the improvements, fixtures and machinery upon each tract; and third, the area and the fair market value of such portion of each tract as shall not be under development."

This section is taken from Acts, 1912, p. 162.

Section 2298, taken from the Code of 1887, declares that "the commissioner, in assessing the value of machinery and other fixtures to real estate, in mining, manufacturing, or similar establishments, shall ascertain the value of all such machinery and fixtures attached thereto, and include the aggregate value thereof as improvement on real estate in the same manner and to the same effect as in the case of buildings and enclosures added to real estate, under the provisions of this chapter; but if the machinery and other fixtures aforesaid shall be the property of one person, and the real estate, in or upon which the said machinery and fixtures shall be used, be the property of another, the said machinery and fixtures shall be assessed and taxed against the owner thereof as personal property, and so listed by the commissioner. For any failure on the part of the commissioner to comply with this or any of the four preceding sections, he shall forfeit fifty dollars for each failure."

It is clear from these sections, upon the facts of this case, that the property in controversy is personal property, and if this were all, it should be taxed as tangible personal property. But the tax bill hereinbefore copied in the margin, which is the latest legislation on the subject, declares that all capital of persons, firms and corporations employed in trade or business not otherwise taxed, except real estate, shall be taxed under schedule C, sec. 8, par. 2nd, of that act. It then declares that capital as used in the tax laws shall be defined as follows:

"1. Inventory of stock on hand, which shall include all raw materials for use in the business, whether at the place of business, in storage, or elsewhere in the State.

"2. The excess of bills and accounts receivable over bills and accounts payable.

"3. All machinery and tools not taxed as real estate.

"4. Money on deposit.

"5. All other property of any kind whatsoever, including all choses in action, equities, demands and claims."

If all improvements, machinery and fixtures on mineral lands could only be taxed as tangible property, it would render nugatory the above provision of the tax bill defining capital. We would have this situation: All of the personal property on the lands of the Norfolk and Western Railway Company which are nonmineral lands, would be taxable as capital, and the drills and other tools which were at the quarry, and which constituted integral and necessary parts of the plant, would be taxable as tangible personal property simply because they were being used on mineral lands. Such a construction is to be avoided. If the trade or business is not otherwise taxed, not the property but the trade or business, then the capital invested therein is to be taxed as capital under this clause of the tax bill, and what constitutes capital is defined.

In the instant case, the predecessors in title of the defendants in error were induced by a five year contract to establish a plant for the manufacture of crushed stone to be used by the Norfolk and Western Railway Company. Large sums of money were expended in establishing and operating the plant. After the expiration of the five year contract, new contracts were

entered into for a year at a time; the contracts for 1923 and 1924 having been entered into with the defendants in error, respectively. Every item of the property in controversy was used as part and parcel of the plant, and was necessary for the convenient and proper operation of the plant, and constituted in fact a part of the capital invested in it. The defendants in error owned no part of the land on which the plant or quarry was located, and hence their movable buildings and fixtures never became a part of the land but were personal property. They represented a part of the money invested in the plant, and became a part of the capital invested in the business. The property involved comes within the spirit and letter of "capital" as defined in the tax bill, and was properly so returned. *Cf. Buchanan County* v. *Ritter Lumber Co.*, 125 Va. 617, 100 S. E. 546.

[5] The assessment of the property of the partnership for the year 1923 was made during that year; but the application for relief was not made until August 30, 1924, and there was a demurrer to the application on the ground that, under section 2237 of the Code, it should have been made before February 1, 1924, and that time having passed, no relief could be afforded.

The several sections of the Code relating to relief against erroneous assessments of property must be considered together. For the most part, they relate to errors in valuation. Section 2237 relates to the correction of assessments of mineral lands or interests therein. Section 2248 relates to the correction of assessments of other than mineral lands. Section 2263 relates to the correction of assessments of personal property. These sections, in the main, deal with the valuation of property. Section 2385 deals with "re-

dress against erroneous assessments of taxes," generally, and especially with double assessments. It contains this clause: "Where it is shown to the satisfaction of the court that there has been a double assessment of the same property in any case, one of which assessments is proper and the other erroneous, and that a proper single tax has been paid thereon, but that the erroneous tax has not been paid, the court may order that the applicant be exonerated from the payment of such erroneous assessments, even though the application be not made within two years as hereinbefore required."

[6] The application for relief alleges "a double assessment of the same property," and that "a proper single tax has been paid thereon," thus bringing the case within the provisions of section 2385 of the Code, and the trial court committed no error in overruling the demurrer thereto.

[7] Assignments of error three and eight are to the action of the trial court in hearing the two cases together. This was a matter resting in the discretion of the trial court, and no injury resulted, or could have resulted, to the plaintiffs in error from its action. The evidence was practically the same in both cases, and the trial court acted wisely in conserving its time.

[8] The remaining assignments of error relate to the failure of the trial court to increase the value of the property returned as capital by the defendants in error. If it be conceded that the trial court had the power to do so, there was no error in its refusal. The preponderance of the evidence was against such increase.

[9] Much was made of the fact that when the partnership incorporated its business it did so at a capitalization of $450,000. This was unimportant. The stock

was issued to the partners only, none of it has been offered on the market, and in fixing the value of the property for taxation, it was not claimed that it was worth anything like this sum. The capitalization furnished no guide for valuation for purposes of taxation.

We find no error in the judgments of the trial court, and they will be affirmed.

*Affirmed.*