# 𝕾𝖙𝖆𝖚𝖓𝖙𝖔𝖓

## CITY OF ROANOKE v. JAMES W. MICHAEL'S BAKERY CORPORATION AND COMMONWEALTH OF VIRGINIA.

September 9, 1942.

Record No. 2548.

Present, Campbell, C. J., and Holt, Hudgins, Gregory and Eggleston, JJ.

The opinion states the case.

*C. E. Hunter*, for the plaintiff in error.

*Abram P. Staples, Attorney General,* and *W. W. Martin, Assistant Attorney General,* for the Commonwealth.

*Frank G. Louthan,* for the Virginia Manufacturers Association, *amicus curiae.*

*J. Gordon Bohannan,* for the City of Petersburg, *amicus curiae.*

*C. O'Conor Goolrick,* for the City of Fredericksburg, *amicus curiae.*

*T. Gibson Hobbs,* for the City of Lynchburg, *amicus curiae.*

*Horace H. Edwards* and *Henry R. Miller, Jr.,* for the City of Richmond, *amicus curiae.*

*Morton L. Wallerstein,* for the League of Virginia Municipalities, *amicus curiae.*

*Charles W. Crush,* for the League of Virginia Counties, *amicus curiae.*

EGGLESTON, J., delivered the opinion of the court.

James W. Michael's Bakery Corporation, engaged in the bakery business in the city of Roanoke, filed a petition in the court below under Tax Code, section 410,[1] for the correction of alleged erroneous assessments of State taxes for the years 1938 and 1939 on its delivery trucks, furniture and fixtures. The assessment complained of was made under sections 68 and 73 of the Tax Code,[2] which classify such

[1] Acts 1928, ch. 45, pp. 35, 225, as amended by Acts 1930, ch. 401, pp. 849, 859.

[2] Acts 1928, ch. 45, pp. 35, 63, 66, as amended by Acts 1928, ch. 232, pp. 738, 739.

property as "intangible personal property" and define it as a part of the "capital" used in "trade or business."

The petition alleged that such classification and assessment violate sections 168 and 171 of the Constitution of Virginia (as amended in 1928), which, it said, segregate such property for local taxation only. Since the city of Roanoke had likewise assessed the property for taxation it was made a party defendant to the petition. The trial below developed into a contest between the Commonwealth of Virginia and the city of Roanoke, in which each claimed the exclusive right to assess the property for taxation. The lower court decided the issue, purely a legal one, in favor of the Commonwealth and the city of Roanoke has appealed. Before us the issue is the same and the real parties are the same.

The pertinent sections of the Constitution, as amended, read as follows:

"Section 168. *Taxable property; taxes shall be uniform as to class of subjects and levied and collected under general laws.*—All property, except as hereinafter provided, shall be taxed; all taxes, whether State, local or municipal, shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws. The general assembly may define and classify taxable subjects, and, except as to classes of property herein expressly segregated for either State or local taxation, the general assembly may segregate the several classes of property so as to specify and determine upon what subjects State taxes, and upon what subjects local taxes may be levied."

"Section 171. *Real estate and tangible personal property, except the rolling stock of public service corporations, segregated for local taxation exclusively.*—No State property tax for State purposes shall be levied on real estate or tangible personal property, except the rolling stock of public service corporations. Real estate and tangible personal property, except the rolling stock of public service corporations, are hereby segregated

for, and made subject to, local taxation only, and shall be assessed or re-assessed for local taxation in such manner and at such times as the general assembly has heretofore prescribed, or may hereafter prescribe, by general laws."

The pertinent provisions of the Tax Code are copied in the margin.

Tax Code, section 7,[3] segregates for local taxation only, among others, real estate, tangible personal property, and the capital of merchants.

Tax Code, section 8,[4] segregates for State taxation only, among others, "taxable intangible personal property."

Tax Code, section 68,[5] after recognizing that "Intangible personal property having been segregated for State taxation only," undertakes to define and specifiy, in subsequent sections, what items are "intangible personal property." Among these are: "Bonds, notes, other evidences of debt," etc. (Tax Code, section 69); Money (Tax Code, section 70); Shares of stock (Tax Code, section 71); Bonds of counties, cities and towns, etc. (Tax Code, section 72); and "Capital of any trade or business of any person, firm or corporation, except the capital of any trade or business which capital is

---

[3] "Section 7. *Segregation of taxable real estate and tangible personal property for local taxation only.*—All taxable real estate and all taxable tangible personal property and the tangible personal property of public service corporations (except rolling stock of corporations operating railroads by steam), and also the capital of merchants are hereby segregated and made subject to local taxation only. * * * " (Acts 1928, ch. 45, p. 36.)

[4] "Section 8. *Segregation for State taxation only of insurance taxes, license on insurance companies, taxable intangible personal property, and rolling stock of railroad companies.*—Insurance taxes, licenses on insurance companies, taxable intangible personal property, rolling stock of all corporations operating railroads by steam, and all other classes of property not hereinbefore specifically enumerated in this chapter, are hereby segregated and made subject to State taxation only. The capital of merchants shall not be subject to State taxation, but may be taxed locally as provided by the preceding section." (Acts 1928, ch. 45, p. 37.)

[5] "Section 68. *Intangible personal property segregated for State taxation only.*—Intangible personal property having been segregated for State taxation only, the subjects of taxation classified by this chapter are hereby defined as intangible personal property, and shall be taxed as hereinafter provided, that is to say (Acts 1928, ch. 45, p. 63): * * * * * *

otherwise specifically taxed or specifically exempt from taxation." (Tax Code, section 73.)[6]

Among the items classified and defined as capital under section 73 are:

"First. The inventory of stock on hand, which shall include all materials for use in the business, * * * .

"Second. The excess of all bills and accounts receivable over bills and accounts payable.

"Third. All money on hand and on deposit.

"Fourth. All other taxable personal property of any kind whatever, * * * but excluding the property hereinafter specifically mentioned in this section."

The section (Tax Code, section 73) then excludes certain items of property from capital. Among these are: (1) Real estate which "shall not be held to be capital under this section, but shall be listed and taxed as other real estate;"

---

[6] "Section 73. *Capital of any trade or business of any person, firm or corporation, except the capital of any trade or business which capital is otherwise specifically taxed or specifically exempt from taxation.*—All capital of any trade or business of any person, firm or corporation, except the capital of any trade or business which is otherwise specifically taxed or specifically exempt from taxation.

"Capital as used herein is defined as follows:

"First. The inventory of stock on hand, which shall include all materials for use in the business, whether at the place of business, in storage or elsewhere in the State.

"Second. The excess of all bills and accounts receivable over bills and accounts payable.

"Third. All money on hand and on deposit.

"Fourth. All other taxable personal property of any kind whatever, including all choses in action, equities, demands and claims, but excluding the property hereinafter specifically mentioned in this section.

"Real estate shall not be held to be capital under this section, but shall be listed and taxed as other real estate.

"Machinery and tools used in a manufacturing or mining business taxable on capital under this section shall not be held to be capital under this section, nor shall such machinery and tools be hereafter assessed as real estate. All such machinery and tools used in a manufacturing or mining business taxable on capital under this section shall be listed for local taxation exclusively, and each city, town and county is hereby authorized to make a separate classification for all such machinery and tools and to fix the rate of levy thereon, but such rate shall not be higher than the rate imposed upon tangible personal property in such city, town, county or district.

(2) "Machinery and tools used in a manufacturing or mining business taxable on capital under this section," which "shall be listed for local taxation exclusively;" and (3) "Personal property, tangible in fact, used or employed in the trades and businesses hereinafter specifically mentioned in this section," namely, "Amusement business, including theatres of every kind and class; auctioneers;" etc.

According to the testimony of the State Tax Commissioner, State taxes on capital, under Tax Code, section 73, are paid largely by corporations engaged in the manufacturing or mining business.

Tax Code, section 283,[7] classifies tangible personal property segregated for local taxation.

The contention of the city of Roanoke is that section 171 of the Constitution, in plain and unambiguous language, provides that, "No State property tax for State purposes shall be levied on * * * tangible personal property," that

"The shares of stock mentioned in section seventy-one of the Tax Code of Virginia, as amended, and bonds of the political subdivisions of this State mentioned in section seventy-two of the Tax Code of Virginia, as amended, shall not be held to be capital under this section.

"Personal property, tangible in fact, used or employed in the trades and businesses hereinafter specifically mentioned in this section shall not be held to be capital under this section, but shall be listed for local taxation exclusively and taxed as tangible personal property, that is to say:

"Amusement business, including theatres of every kind and class; auctioneers; barbers, including beauty shops; bowling; billiard and pool rooms; collection agencies; contractors, plumbers and steamfitters; educational institutions whose property is taxable under the Constitution and laws of this State; garage business; hospitals; hotels; laundries, including cleaning, pressing and dyeing establishments; lodging and boarding houses; motor vehicle carriers; photographers; restaurants, including eating houses and cafeterias; shoeshining business; taxi-cab business, including the business of motor vehicle hiring; transfer business; and undertakers and funeral directors.

"This section shall not be construed to apply to any profession which the State regulates by law, nor shall it be construed to include the business of farming. Property used or employed in such professions, and in the business of farming, shall be taxable in the actual form in which it may be, and not as capital." * * * * * (Acts 1928, ch. 45, pp. 35, 66, as amended by Acts 1928, ch. 232, pp. 738, 739.)

[7] "Section 283. *Tangible personal property segregated for local taxation only; classification.*—Tangible personal property having been segregated by law for local taxation only, the classification hereunder shall be as follows:

such property is "segregated for, and made subject to, local taxation only," and is to be "assessed * * * for local taxation" in such manner as the General Assembly may provide. Moreover, it says, under the provisions of section 168 of the Constitution, the General Assembly's power to define and classify taxable subjects is subject to such segregation. Hence, it says, when sections 68 and 73 of the Tax Code undertake to define and classify certain items of personal property, such as delivery trucks, furniture and fixtures, which are tangible in fact, as "intangible personal property," and to levy a tax thereon, on the theory that they are a part of the "capital" used in business, these legislative acts run counter to the plain language of section 171 of the Constitution and are void.

There is great force in this argument, but upon consideration we shall see that the matter is not so simple nor can it be so easily disposed of.

The position of the Commonwealth is that the last sentence of section 168 of the Constitution, as amended, gives to the General Assembly the broad power* to "define and classify taxable subjects;" that the terms "tangible personal property" and "intangible personal property," as used in our tax laws, have had a meaning, well defined and understood by the General Assembly, by the courts, by the tax officials, and by the people for many years prior to the amendment of these sections of the Constitution in 1928;

*The Commonwealth's brief says that, while not a "matter of controlling importance here," the limitation in this sentence is on the General Assembly's power to "*segregate*" and not on its power to "*define and classify*."

"1. The aggregate number of horses, mules and other kindred animals, and the value thereof.
"2. The number of cattle, and the value thereof.
"3. The number of sheep and goats, and the value thereof.
"4. The number of hogs, and the value thereof.
"5. The aggregate number and value of all automobiles, motor trucks, motorcycles, and all other motor vehicles.
"6. The aggregate value of all animal drawn vehicles and bicycles.
"7. The aggregate value of all farming implements and tools of mechanics.
"8. The aggregate value of all felled timber, ties, poles, cord wood, bark, and other timber products, and all agricultural products, in the hands. or

that under our tax laws capital used in business, as a composite whole, although including some items of personal property tangible in fact, has for a long time been classified as "intangible personal property;" and that the draftsman of the amendment to section 171 of the Constitution, in segregating "tangible personal property" to the localities for taxation, and in prohibiting the levying thereon of a State tax, used the term in the same sense in which it had been and was currently used and understood in our tax laws,—that is, excluding capital in business which had theretofore been classified as "intangible personal property."

In considering the constitutionality of an act of the General Assembly we must bear in mind these principles:

█ (1) A statute is not to be declared unconstitutional unless the court is driven to that conclusion. *Richmond Linen Supply Co.* v. *Lynchburg,* 160 Va. 644, 647, 169 S. E. 554 (affirmed 291 U. S. 641, 54 S. Ct. 437, 78 L. Ed. 1039).

██ (2) "Courts uphold acts of the legislature whenever their constitutionality is debatable; presumptions are in their favor." *West Bros. Brick Co.* v. *Alexandria,* 169 Va. 271, 288, 192 S. E. 881, 888 (appeal dismissed 302 U. S. 658, 58 S. Ct. 369, 82 L. Ed. 508). Or stating the proposition in

possession, legal or constructive, of a purchaser, provided that grain, tobacco and other agricultural products in the hands of a producer of the same are hereby declared exempt from taxation as property under this section.

"9. The aggregate value of all household and kitchen furniture, including gold and silver plates, plated ware, watches and clocks, sewing machines, refrigerators, automatic refrigerating machinery, vacuum cleaners, and all other household machinery, books, firearms and weapons of all kinds.

"10. The aggregate value of all pianos, organs, victrolas, phonographs, and records to be used therewith, and all other musical instruments of whatever kind, radio instruments and equipment.

"11. The aggregate value of all oil paintings, pictures, statuary, curios, articles of virtu and works of art.

"12. The aggregate value of all diamonds, cameos, or other precious stones, and all precious metals used as ornaments or jewelry.

"13. The aggregate value of all boats or water craft under five tons burthen used for business or pleasure.

"14. The aggregate value of all ships, tug boats, barges, boats, or other craft of five tons burthen or over and all other floating property, not required to be assessed by the State corporation commission, used for business or pleasure, together with their tackle, rigging, furniture, and all else that

another way, "Every reasonable doubt should be resolved in favor of the constitutionality of an act of the legislature." *Hunton* v. *Commonwealth*, 166 Va. 229, 236, 183 S. E. 873, 876.

(3) Framers of the Constitution are presumed to have been aware of prior decisions of their own courts and of legislative acts construing words or phrases, and to have used such words or phrases in the light of such construction. *Shenandoah Lime Co.* v. *Governor of Virginia*, 115 Va. 865, 871-2, 80 S. E. 753, Ann. Cas. 1915C, 973.

(4) Contemporaneous legislative construction of a constitutional provision is entitled to great weight. *Button* v. *State Corp. Comm.*, 105 Va. 634, 638, 54 S. E. 769; *Shenandoah Lime Co.* v. *Governor of Virginia*, *supra* (115 Va., at page 871); *Blake* v. *Marshall*, 152 Va. 616, 625, 148 S. E. 789; *Lipscomb* v. *Nuckols*, 161 Va. 936, 948, 172 S. E. 886; *Hunton* v. *Commonwealth*, *supra* (166 Va., at page 242, 183 S. E., at page 878).

(5) The practical construction given to a constitutional provision by public officials and acted upon by the people is likewise entitled to great weight. *Hunton* v. *Commonwealth*, *supra* (166 Va., at page 242, 183 S. E., at page 878); *Commonwealth* v. *Stringfellow*, 173 Va. 284, 289, 4 S. E. (2d) 357, 359.

Prior to the adoption of the Constitution in 1902, a general property tax was in effect in this State. Generally speaking, all property (except such as was specifically exempt from taxation), including real estate, tangible and intangible

pertains to them, or of any share or interest therein, though the said boats or other water craft or any one of them, may not be at the time of the assessment in the waters of the State of Virginia.

"15. The aggregate value of all other tangible personal property not herein specifically enumerated, including the value of all seines, pound nets, fykes, weirs and other devices for catching fish, and the aggregate value of all toll bridges, turnpikes and ferries, except steam ferries owned and operated by a chartered company, and the value of all poles, wires, switchboards, et cetera, telephone or telegraph instruments, apparatus, et cetera, owned by any person, firm, association or company not incorporated.

"No property shall be assessed as tangible personal property which the law classifies as intangible personal property." (Acts 1928, ch. 45, at page 182.)

personal property, was subject to the same State tax.[8] But while the rate of taxation on each was the same, the General Assembly saw fit to divide personal property into classes. Under Code 1860, ch. 35, section 55, capital invested in any "manufacturing or mining business," exclusive of real estate, was required to be listed separately and assessed as "capital."

In the Acts of 1865-6, ch. 1, pp. 1, 18, tangible personal property (such as is found in the present Tax Code, section 283)[9] was classified in "Schedule B." In "Schedule C" capital employed in business, exclusive of real estate, was classified under "choses in action, moneys, credits and capital," and required to be taxed as capital. Capital was similarly classified in the subsequent acts noted in the margin.[10]

Immediately after the Constitution of 1902 became effective the General Assembly met in extra session to adjust the statute law to the changes in the organic law. Section 168 of the Constitution, just adopted, required that "all taxes, whether State, local or municipal, shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." Generally speaking, the first revenue measure (Acts 1902-3-4, ch. 148, p. 155), under this section of the new Constitution, followed the classification of tangible and intangible personal property which had been in effect for a number of years. "Schedule B" included the classification of "tangible personal property" in a manner almost identical with that found in the present Tax Code, section 283. Intangible personal property was classified under "Schedule C." This included "bonds, notes, and other evidences of debt" and "capital" used in business. "Capital" was defined as including not only "moneys and credits actively used and employed in carrying on the trade or business," but also "materials, goods, wares, and mer-

---

[8] See Code 1860, ch. 40, sections 1 and 2; Code 1887, section 579, referring to pertinent acts.

[9] *Supra,* note 7.

[10] Acts 1871-2, ch. 159, pp. 149, 165; Acts 1874, ch. 240, pp. 282, 300; Acts 1881-2, ch. 119, pp. 497, 499; Acts 1883-4, ch. 450, pp. 561, 563-4; Acts 1889-90, ch. 244, pp. 197, 200, 201.

chandise on hand." The act expressly provided that, "real estate shall not be listed as such capital," an exclusion which, as we have seen, was found in the earlier statutes (Code 1860, ch. 35, section 55).

Thus we see that immediately after the adoption of the Constitution of 1902, the General Assembly continued to classify and define capital, as a composite whole, as intangible personal property although it included items tangible in fact, such as "materials, goods, wares, and merchandise on hand."

In the Acts of 1908, ch. 213, p. 322, the classification of intangible personal property was amended but the definition of capital remained unchanged. Its classification with other intangibles was continued, and the act provided that it should not be taxed otherwise than as capital.

At the special session of 1915 "Schedule C," embracing intangible personal property and including capital, was twice amended, the second act repealing the first.[11] The definition of capital was not substantially changed and in terms it was still recognized and classified as intangible personal property.

This extra session of the General Assembly took the first step towards segregation by adopting an act[12] which provided in part that, "pursuant to the provisions of section one hundred and sixty-nine of the Constitution of Virginia, all taxable real estate and all taxable tangible personal property as enumerated in section six in schedule 'B' " of the Acts of 1902-3-4, ch. 148, p. 155, and "also the tangible personal property of public service corporations (except rolling stock of corporations operating railroads by steam) be, and the same are hereby, segregated and made subject to local taxation only." This segregation was qualified by a proviso that such real estate and tangible personal property were to be subject for the year 1915, "and until otherwise changed by law," to "the present State school tax of ten

[11] Acts 1915, Ex. Sess., ch. 70, p. 98; *id.*, ch. 117, p. 160.
[12] Acts 1915, Ex. Sess., ch. 85, p. 119, repealing a former act, Acts 1915, Ex. Sess., ch. 63, p. 84.

cents on every one hundred dollars of the assessed value" of such property. In a like manner "all taxable intangible personal property" was "made subject to State taxation only." But this segregation was likewise made subject to a proviso in favor of a small local tax.

Since capital, as we have seen, was classified as "taxable intangible personal property," under this plan of partial segregation the principal tax levied thereon was by the State.

Between 1915 and 1926 that part of the tax laws dealing with the taxation, classification and definition of capital was amended by five acts of the General Assembly.[13] It is not necessary that we review these in detail. Suffice it to say that although each included in the definition of capital some items of personal property tangible in fact, capital was classified as intangible personal property and subjected to State taxation, while other tangible personal property was segregated for local taxation.

It is clear, therefore, that from the Acts of 1865-6, ch. 1, pp. 1, 19, to the Acts of 1924, ch. 306, p. 468, a period of approximately sixty years, the General Assembly had consistently classified and defined capital used in business, exclusive of real estate, as intangible personal property.

In the meantime this court in a number of decisions had recognized this classification and definition.

In *Commonwealth* v. *United Cigarette Machine Co.*, 119 Va. 447, 474-5, 89 S. E. 935, we held that "materials, goods, wares and merchandise on hand" were taxable as capital and as intangible property rather than as tangible property under "Schedule C," section 8, of the tax bill, as amended by Acts 1908, ch. 213, p. 322. See also, *Union Tanning Co.* v. *Commonwealth*, 123 Va. 610, 623, 96 S. E. 780.

In *American Tobacco Co.* v. *Richmond*, 125 Va. 29, 99 S. E. 777, we held that inventory on hand was properly taxable as capital and as intangible property at the situs of the home office of the American Tobacco Company in Rich-

---

[13] Acts 1916, ch. 382, pp. 655, 657-9; Acts 1918, ch. 101, pp. 171, 172-4; Acts 1920, ch. 477, pp. 793, 794; Acts 1922, ch. 332, p. 551; Acts 1924, ch. 306, p. 468.

mond, and not as tangible property at Danville where it was actually located. See also, *Buchanan County* v. *Ritter Lumber Co.*, 125 Va. 617, 100 S. E. 546, where felled timber and railroad ties were held taxable as capital or intangible property.

In *Commonwealth* v. *Pembroke Limestone Works*, 145 Va. 476, 134 S. E. 717, the question involved was whether machinery, tools and fixtures should be taxed as capital (intangible property) or as tangible property under the Act of 1922, ch. 332, p. 551. This act included in the definition of capital all machinery and tools not taxed as real estate. This court said (145 Va., at page 486): "Every item of the property in controversy was used as part and parcel of the plant, and was necessary for the convenient and proper operation of the plant, and constituted in fact a part of the capital invested in it. * * * They represented a part of the money invested in the plant, and became a part of the capital invested in the business. The property involved comes within the spirit and letter of 'capital' as defined in the tax bill, and was properly so returned."

It is true that these cases were decided before the amendment to section 171 of the Constitution placed any restriction on the segregation or classification of tangible personal property. They are pertinent, however, to show that the judicial branch of the government was thoroughly cognizant that capital of a business as a composite whole, although including items of property tangible in fact, was classified by the General Assembly and taxed as intangible property; or to state the matter conversely, that the term "tangible personal property" did not include capital used in a business.

When the General Assembly convened in 1926, partial segregation, as we have seen, had been in effect since 1915. In a special message to that body, Governor Byrd pointed out that it had not been satisfactory and had resulted in many inequalities. Consequently, he recommended the adoption of complete segregation of taxable subjects. See, Senate Journal of 1926, Doc. No. 7. In his message Gov-

ernor Byrd reviewed the probable effect of complete segregation upon the revenue of the State and of the localities. It is manifest that this estimation was based upon the assumption that capital, as then classified, would continue to be taxed by the State, and that no part thereof would be taxed by the localities. Certainly there was no suggestion that capital would be broken down into its component parts and segregated for taxation in part by the State, and in part by the localities.

Complete segregation of the taxable subjects, as recommended by Governor Byrd, was adopted by the General Assembly in 1926. Acts 1926, ch. 576, p. 955. Section 2205 of the Code of 1919 was amended to provide that, "All taxable real estate and all taxable tangible personal property and the tangible personal property of public service corporations (except rolling stock of corporations operating railroads by steam) and also the capital of merchants are hereby segregated and made subject to local taxation only." (Acts 1926, p. 955.)

Section 2206 of the Code of 1919 was amended to provide that, "Insurance taxes, licenses on insurance companies, taxable intangible personal property, rolling stock of all corporations operating railroads by steam, and all other classes of property not hereinbefore specifically enumerated in this chapter, shall be and the same are hereby segregated and made subject to State taxation only.' The capital of merchants shall not be subject to State taxation, but may be taxed locally as provided by the preceding section." (Acts 1926, p. 956.)

Capital, exclusive of real estate and machinery or tools, was defined and classified for State taxation as intangible property, as shown by an extract from the act copied in the margin.[14]

---

[14] "Section 8. *Taxation of intangible personal property and money.*—The classification under schedule 'C' shall be as follows:

"Subsection 1. Class 1.—Bonds (except bonds of the United States, bonds of the State of Virginia, and bonds of counties, cities and towns or other political subdivisions of this State), notes and other evidences of debt, * * * .

■ It is perfectly plain, then, that when the General Assembly segregated "tangible personal property" for local taxation under this act, it did not intend to include in that term capital employed in business, for this was expressly classified as "intangible personal property" and was segregated for taxation by the State, although the definition of capital included some items of personal property which were tangible in fact, such as "inventory of stock on hand," "'materials for use in the business," and "'All other property of any kind whatsoever."

This same session of the General Assembly took the first step toward incorporating the plan of complete segregation into the Constitution. By joint resolution (Acts 1926, ch. 275, p. 476) it proposed that section 171 of the Constitution be amended to read as it now stands. Real estate and tangible personal property, except the rolling stock of public service corporations, were to be segregated for, and made subject to, local taxation only.

The General Assembly of 1926 provided for a commission for the revision, simplification and codification of the general tax laws of Virginia (Acts 1926, ch. 157, p. 284). The present Tax Code of Virginia (Acts 1928, ch. 45, p. 35) is the result of the work and report of this commission. This

"Subsection 2. Class 2.—All capital, not otherwise specifically taxed or not specifically exempt from taxation, used or employed by any person, firm or corporation, in any trade or business. But real estate used or employed in such business shall not be held to be capital, but shall be listed and taxed as other real estate. No machinery or tools used in such trade or business shall be hereafter assessed as real estate or as capital. All such machinery and tools shall be listed for local taxation, exclusively, and each city, town and county is hereby authorized to make a separate classification for all such machinery and tools and to fix the rate of levy thereon, but such rate shall not be higher than the rate imposed upon tangible personal property in such locality.

"Capital as used herein is defined as follows:

"(1) The inventory of stock on hand, which shall include all materials for use in the business, whether at the place of business, in storage or elsewhere in the State.

"(2) The excess of all bills and accounts receivable over bills and accounts payable.

"(3) All money on hand and on deposit.

"(4) All other property of any kind whatsoever, including all choses in action, equities, demands and claims. * * * " (Acts 1926, p. 957.)

commission was, of course, familiar with statutory segregation as well as the proposed constitutional segregation. Had the members seen anything inconsistent in the two, certainly they would have brought it to the attention of the General Assembly. And, yet, in accordance with their recommendation, statutory segregation substantially as set up by the 1926 General Assembly was continued. Tangible personal property along with real estate was segregated for local taxation, and intangible personal property was segregated for State taxation (Tax Code, sections 7, 8; Acts 1928, pp. 36, 37). Capital used in business (exclusive of real estate and machinery or tools) was classified as intangible property (Tax Code, section 73; Acts 1928, p. 66). By an act passed at the same session, Tax Code, section 73, was amended to read as it now stands[15] (Acts 1928, ch. 232, p. 738).

The joint resolution proposing an amendment to section 171 of the Constitution, providing for complete segregation, was again adopted at the 1928 session (Acts 1928, ch. 533, p. 1401). Again, the General Assembly saw no inconsistency in the proposed constitutional amendment and statutory segregation as written.

It is unthinkable that the same session of the General Assembly could have meant one thing when it segregated "tangible personal property" for local taxation by statute, and an entirely different thing when in almost identical language it proposed that this class of property be segregated for local taxation by the Constitution.

On the contrary, it is both logical and reasonable to think that the term "tangible personal property" was intended to have the same meaning both in the proposed constitutional amendment and in the statute, and that it was the purpose of the General Assembly to recommend to the people that the plan of complete segregation, which had been accomplished by legislative enactment, be written into the organic law by an amendment to the Constitution.

---

[15] *Supra*, note 6.

The subsequent conduct of the General Assembly clearly demonstrates that it has adhered to its interpretation that the present language of section 171 of the Constitution does not inhibit the classification of capital of a concern engaged in the manufacturing or mining business as intangible personal property and as taxable by the State. Section 73 of the Tax Code remains the same as written by the 1928 session (Acts 1928, ch. 232, p. 738), and efforts to amend it by eliminating from the definition of capital certain items of property tangible in fact have been consistently rejected. (See, Senate Bill No. 200, 1934 session; House Bill No. 478, 1938 sesson.)[16]

While not controlling, such legislative interpretation of the constitutional provision, as we have seen, is entitled to great weight.

Again, the record here discloses that the public officials have interpreted the constitutional provision in a similar manner. The State Tax Commissioner testified that since he assumed office in 1926, he has uniformly enforced the statute requiring that inventory of stock on hand and furniture and fixtures and delivery equipment of mining and manufacturing concerns be reported for State taxation as capital. He further testified that local tax officials have acquiesced in this practice. Indeed, it is conceded that the practice contended for by the Commonwealth here is so deeply rooted in our scheme of taxation that to adopt the contention of the city of Roanoke would result in a heavy loss of revenue to the State and a corresponding gain for the localities.

While, of course, such consequences are not controlling, they show that the contention of the Commonwealth is more compatible with the probable intent of the framers of the segregation amendment than the opposite contention of the city here.

It is unquestionably true, as argued by the city, that when the language of a constitutional provision is so

---

[16] Strange to say, these bills attempted to eliminate from the definition of capital some but not all items of property tangible in fact. Inventory on hand was left in the definition.

plain and definite as to leave no doubt of its meaning and true intent there is no room for construction. But that is not the case here. We are not concerned with the literal meaning of the term "tangible personal property" standing alone. We are considering its meaning as used in the plan of constitutional segregation. After all, section 171 of the Constitution is but a part of our tax structure, State and local. To get at the real intent of the section we must look at the terms in the light of their use in the other parts of this structure.

Our study of the history of this tax structure convinces us that the term "tangible personal property," as used in section 171 of the amendment to the Constitution, is a restricted or technical term and was not intended to include capital used in business. In such restricted sense the term has been used by the General Assembly both prior and subsequent to the adoption of the amendment. And what is even more to the point, it was so used by the General Assembly at the identical session which proposed the amendment. To adopt the contention of the city would be to say that the General Assembly illogically intended that the same words were to have one meaning when used in the statute and another when used in the organic law.

It is argued that there was nothing in the form of the ballot by which the proposed amendment to section 171 of the Constitution was submitted to the people for adoption or rejection (Acts 1928, ch. 205, pp. 636, 699, 700), to indicate that there were any limitations or qualifications on the words "tangible personal property" which was to be segregated for local taxation. This is true. But it is likewise true that the people are presumed to have known that for many years capital used in business had been classified and taxed as intangible personal property and not as tangible personal property. They are presumed likewise to have known that the purpose and effect of the proposed amendment was simply to incorporate in the Constitution the principle of complete segregation which their representatives had accomplished by legislative enactment in 1926 and

1928, and not to revolutionize the method of taxing capital used in business. It is a matter of common knowledge that during the campaign preceding the election at which the adoption or rejection of this proposed amendment was submitted to the people, the purpose of the proposed amendment and its effect upon the finances of both the State and localities was thoroughly debated and discussed. The closeness of the vote, as disclosed by the Governor's proclamation showing the adoption of the amendment, "For 75,160; Against 59,600," evinces the intense interest of the electorate in the matter. There is, we think, no basis for the argument that the people did not fully understand the purpose and effect of the proposed amendment.

The city makes the argument that if the General Assembly is to be permitted to classify these items of tangible personal property as capital invested in business, and taxable by the State as intangible personal property, there is nothing to prevent it from treating real estate in the same manner. The answer to that argument is that real estate, certainly since the Code of 1860, ch. 35, section 55, has been specifically excluded from the classification of capital invested in business. It was treated in the same manner by the General Assembly in 1926 and 1928 when the proposed constitutional amendment was under consideration. Therefore, capital as used and understood in our tax laws, does not include real estate.

The city further argues that since section 171 of the Constitution, as amended, expressly excepts one class of tangible property—rolling stock of public service corporations—from the allocation to the localities, the familiar principle of *expressio unius est exclusio alterius* excludes other exceptions. But it was unnecessary to except capital here because it had never been classified as tangible personal property and was, therefore, not covered by the language of the section. On the other hand, it was necessary to except rolling stock of public service corporations, if that property was not to be segregated to the localities, because it had al-

ways been assessed as tangible personal property and not as capital of public service corporations.

The city further argues that it is inconsistent for the General Assembly to classify a truck used in a manufacturing business as part of its capital, and a truck used in a laundry, or other excluded businesses under section 73 of the Tax Code, as tangible personal property taxable by the localities.

But section 171 of the Constitution makes no specific allocation of intangible personal property, including capital, to the State for taxation. Such segregation is merely the result of the statute (Tax Code, section 7).[17] Therefore, if the General Assembly, as a matter of policy, deems it proper to exclude from its definition of capital certain property of a few businesses, such as theatres, auctioneers, barbers, etc. (Tax Code, section 73),[18] which the State might otherwise tax, and sees fit to segregate such property to the localities for taxation, there is nothing in the Constitution to prohibit it from doing so.

The crux of the case is whether the language of the last sentence of section 171 of the Constitution, as amended, is so plain as to need no interpretation, or whether we may inquire into the historical background of the words used. The matter has been ably presented to us by counsel for both sides and their respective arguments have been buttressed by helpful briefs of *amici curiae*. We have given careful consideration to the arguments advanced. While the matter is not entirely free from doubt, that doubt we must, under well-settled principles, resolve in favor of the constitutionality of the acts in question. On the whole we are of opinion that there is no error in the judgment complained of and it is

*Affirmed.*

HOLT, J., dissenting.

The review by Mr. Justice Eggleston of relevant statutes and decisions is so comprehensive and satisfactory as to make a restatement of them unfruitful.

---

[17] *Supra*, note 3.

[18] *Supra*, note 6.

Segregation as a system of taxation, designed to apportion more ratably its burdens, appeared in our Constitution for the first time in 1928, section 171. Among the reasons advanced in its support was an inequality of assessments, which seemed to be unavoidable. That is to say, an acre of land in Washington county might be assessed for taxation at one valuation and another in Surry, equally productive, might be assessed at another. The tendency of assessors to stand by their neighbors is understandable. And this defect in valuation applies not only to land but to automobiles, trucks, livestock and to other tangible property.

That communities should bear the burden of local government is eminently fair. Under this system valuations become relatively unimportant. *Roanoke* v. *Gibson*, 161 Va. 342, 170 S. E. 723.

If Augusta county must carry the burden of county government and if Rockingham county must carry the burden of its county government, tax rates and valuations automatically readjust themselves. If land in Augusta was assessed at its full cash value, then a tax of fifty cents would yield no more than would a tax of one dollar on a fifty per cent. valuation. The landowner in each instance would pay the same. In such circumstances the rate of valuation and the rate of taxation in Rockingham county would concern it not at all.

These are among the reasons which brought about segregation. It was not designed to confirm chaotic customs but to make their practice no longer possible. Certainly it was not intended to perpetuate a system confessedly indefensible. It looked to the future and its purpose was to wipe away preceding abuses. It would be unlooked for and curious if these abuses can be successfully cited to sustain themselves after they have been abolished.

And so matters stood until 1928, when section 171 of the Constitution, as amended, came into effect. It reads:

"Segregation of realty and tangible personalty for local taxation; exception.—No State property tax for State pur-

poses shall be levied on real estate or tangible personal property, except the rolling stock of public service corporations. Real estate and tangible personal property, except the rolling stock of public service corporations, are hereby segregated for, and made subject to, local taxation, only, and shall be assessed or reassessed for local taxation in such manner and at such times as the general assembly has heretofore prescribed or may hereafter prescribe, by general laws."

"Real estate and tangible personal property, * * * are hereby segregated for, and made subject to, local taxation, only," and this in language so plain that the wayfaring man, if he can read, must understand. It is no more ambiguous than the multiplication table. The possibilities of English have been exhausted.

It is perfectly true that section 168 of the Constitution gives to the Legislature power to classfy certain taxable subjects, but in terms this power does not extend "to classes of property herein expressly segregated for either State or local taxation." Indeed, if this were not true, said section 171 would be meaningless and the entire doctrine of segregation relegated to the wastebasket.

"The province of construction lies wholly within the domain of ambiguity." *Hamilton* v. *Rathbone,* 175 U. S. 414-421, 20 S. Ct. 155, 158 (44 L. Ed. 219).

"If it is too plain to misunderstand, there is nothing to construe." *Norfolk Motor Exchange* v. *Grubb,* 152 Va. 471, 147 S. E. 214, 63 A. L. R. 310.

"It is elementary that it is not permissible to interpret that which needs no interpretation." *Fairbanks, etc., Co.* v. *Cape Charles,* 144 Va. 56, 131 S. E. 437.

"Constitutions are not esoteric documents and recondite learning ought to be unnecessary when we come to interpret provisions apparently plain. They speak for the people in convention assembled, and must be obeyed.

" 'It is a general rule that the words of a Constitution are to be understood in the sense in which they are popularly

employed, unless the context or the very nature of the subject indicates otherwise.'" Black on Interpretation of Laws, p. 25, *Lipscomb* v. *Nuckols*, 161 Va. 936, 172 S. E. 886, and *Quesinberry* v. *Hull*, 159 Va. 270, 165 S. E. 382.

Statutes, and particularly Constitutional mandates, should be construed in the light of those conditions existing at the time of their enactment and not in the light of subsequent legislation.

In *Franklin, etc., Ry. Co.* v. *Shoemaker*, 156 Va. 619, 159 S. E. 100, we said "A statute which is plain upon its face should be taken at its face value," and followed that settlement by this citation:

"There is always a tendency to construe statutes in the light in which they appear when the construction is given. It is easy to be wise after we see the results of experience * * * , but in endeavoring to ascertain what the Congress of 1862 intended, we must, as far as possible, place ourselves in the light that Congress enjoyed, looking at things as they appear to it, and discover its purpose from the language used in connection with attending circumstances." *Platt* v. *Union Pacific R. R. Co.*, 99 U. S. 48, 63, 25 L. Ed. 424; *County of Schuyler* v. *Thomas*, 98 U. S. 169, 25 L. Ed. 88.

Tax Code provisions must conform to both the Federal and the State Constitutions. *Carpel* v. *Richmond*, 162 Va. 833, 175 S. E. 316.

If the Legislature can by fiat make a truck tangible, then it might have dealt with land in the same way as it might have with automobiles or cattle. It is no answer to say that it did not do it. It could, by processes of reasoning equally convincible, have held them to be intangible and figments of the imagination—a miracle brought about by waving hands. If a truck is not tangible, then the great globe itself is not.

If the Smith Land & Cattle Company, Incorporated, held land, livestock and facilities for transportation, its owners would be that company's stockholders, apportioned according to their input. To undertake to tax this stock, some to the State and some to the county, on the theory that

some of these holdings were tangible and some intangible, would be incredibly confusing. And this when we remember that land, at least, is concededly tangible and subject to local taxation alone.

Under the Tax Code, section 73, a contractor's truck is "personal property, tangible in fact," and must be so taxed. Should he sell that truck to a bakery to be used in trucking, as had theretofore been the case, it would then have suffered a "sea change into something rich and strange." A grubby truck of the earth and muddy would find itself sublimated into an intangible concept which we for convenience call capital in business. And so might a sheep. And this in the very teeth of a constitutional amendment fully debated and finally adopted.

Of course construction given to statutes by those who are charged with their enforcement is entitled to great weight. But time cannot successfully support something not so— demonstratively not so. No construction of the multiplication table to the effect that three times three is seventeen could become valid with age.

Indeed, there seems to have been no unanimity of custom or practice, for it was necessary here that the State Tax Commissioner, in a laudable effort to increase the State's revenue, should intervene.

As I see it, our problem, with brushwood cut away, is extraordinarily simple. Shall we follow the Constitution or shall we follow the Legislature and our State Tax Commissioner?

No statute in Virginia has ever been sustained which flatly overrides a Constitutional mandate.

One must travel far to prove that a truck is not a truck.