# Richmond

JOSEPH R. MICKENS v. COMMONWEALTH OF VIRGINIA.

October 13, 1941.

Record No. 2436.

Present, All the Justices.

The opinion states the case.

*Charles Curry,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Walter E. Rogers, Special Assistant,* for the Commonwealth.

HUDGINS, J., delivered the opinion of the court.

This writ of error brings under review the proceedings of a trial in which Joseph R. Mickens, a negro youth between fifteen and sixteen years of age, was convicted of rape and sentenced to the electric chair.

The victim in this case was ravished between 11:00 and 12:00 p. m. on November 24, 1940, on a vacant lot near the Lutheran church in the town of Waynesboro. She immediately reported the facts to her husband, who straightway reported the matter to the police. Early the following day the actions of the accused—the dirt on his trousers and shoes, and the scratches on his face—aroused the suspicion of the police, who took him in custody. Later, upon being examined, he confessed to the commission of the crime. A warrant for his arrest was issued, by which authority he was held for action by the grand jury.

The accused contends that no warrant could be legally issued for his arrest except with permission of the judge of the circuit court or the judge of the juvenile and domestic relations court. This contention is based upon the provision of Code, sec. 1911, which reads: "Nothing in this chapter shall be construed as forbidding the arrest of any child as is now or may hereafter be provided by law.

"But no warrant of arrest shall be issued for any child under twelve years of age, except with the written permission of a judge of a court of record or the justice of the juvenile and domestic relations court; * * * . And no warrant of arrest shall be issued for any child between the ages of twelve and eighteen years, except when the use of such process is imperative. * * * ."

The justice of the peace, at the time he issued the warrant, knew that a horrible and heinous crime had been committed, and that the confession of the accused and other circumstances pointed to the accused as the criminal agent. These facts rendered the use of the process of arrest imperative.

The accused, in his argument, concedes that no tribunal other than the Circuit Court of Augusta county was clothed with authority to try his case on the merits. Yet he contends that, under sec. 1911 of the Code, it was the duty of the Circuit Court of Augusta county to transfer the case to the juvenile and domestic relations court, for it to make a separate investigation and to determine whether the crime charged constituted an aggravated felonious offense.

Chapter 78 of the Code of 1919 was amended in 1922. Sec. 1905 provides: "Juvenile and domestic relations courts * * * shall have exclusive original jurisdiction for the trial of all matters and cases arising under this chapter."

Code, sec. 1910, provides for the return of the summons, the trial of the case, and the disposition of the child. The last paragraph provides: "Unless the offense is aggravated or the child is of an extremely vicious or unruly disposition, no court, judge or justice shall sentence or commit a child under the age of eighteen years to a jail, workhouse, or police station, or send such a child on to the grand jury, nor sentence such child to the penitentiary or to the State convict road force."

Secs. 1905-1922, in dealing with the proceedings before juvenile courts, provide that such proceedings are

not to be considered criminal proceedings, and that no adjudication upon the status of any child is to be denominated a conviction. No power is given to the juvenile courts to convict any child of any crime, either mis-demeanor or felony, or to commit any child to any penal institution. Such court may only adjudge a child a delinquent and commit him, not to a penal institution, but to the State Board of Public Welfare, which board is given power to make proper disposition of the child. Sec. 1910.

■ It is thus seen that the matters over which the juvenile courts are given exclusive original jurisdiction are the ''disposition, custody or control of delinquent, dependent or neglected children,'' but not their trial and punishment for the offense which they have committed.

■ The trial and punishment of minor offenders follows the regular criminal procedure, modified, in certain respects, by the statutes setting up juvenile and domestic relations courts. These statutes have established a system whereby most juvenile offenders are first subjected to the jurisdiction of the juvenile courts for proceedings therein designed to subject such offenders to the supervision and control of the State in a manner in which the delinquent ways of the child will be corrected and he be made to lead a correct life.

■ But the provisions contained in these statutes clearly show that the legislature recognized that children who have committed grave offenses could not be properly dealt with according to the methods and procedure established by such legislation. For this reason the regular criminal procedure and the original jurisdiction of circuit courts in felony cases of an aggravated nature are retained.

Any other construction of the statutes involved would be in conflict with sec. 8 of the Virginia Constitution, which, in part, provides: A person ''shall not be deprived of life or liberty, except by the law of the land or the judgment of his peers * * * .

"Laws may be enacted providing for the trial of offenses not felonious by a justice of the peace or other inferior tribunal without a jury, preserving the right of the accused to an appeal to and a trial by jury in some court of record having original criminal jurisdiction, * * * ."

Since the adoption of the Constitution, trials by justices of the peace have been abolished and trial justice and juvenile and domestic relations courts have been created. These are the other inferior tribunals authorized or permitted by the section quoted.

The juvenile and domestic relations court is given no power to acquit or convict a minor over twelve years of age charged with an aggravated felonious offense. In such a case, such court acts only as a court of investigation. If the evidence for the Commonwealth presents a *prima facie* case, the juvenile and domestic relations court should hold the accused for action by the grand jury. If the offense charged is not well-founded, it should dismiss the case, having, in this regard, the same jurisdiction that justices of the peace formerly had and trial justices now have. The judgment of the juvenile and domestic relations court in such a case is not conclusive, and the judgment of dismissal is not sufficient to bar action by the grand jury.

The accused contends that it was the duty of the trial court to appoint a guardian *ad litem* to defend him. It has long been settled in this jurisdiction that a minor charged with a criminal offense has a right to appear in person or by attorney of his own selection. In *Word v. Commonwealth,* 3 Leigh (30 Va.) 743, 759, it is said: "Criminal proceedings against infants, ought, in all cases, to be conducted in the same manner as against persons of full age. The defendant, in this case, had a right to appear in person, or by attorney of his own selection; * * * ."

It is true that sec. 1909 provides that, in the event those having the legal custody of the child have not been

served with summons or are not in court, the court is required to appoint a probation officer or a discreet and competent attorney at law to act as guardian *ad litem* to represent the interests of such child.

The hearing contemplated is, first, to determine whether such child is delinquent within the meaning of the act; and, second, to ascertain whether or not it is best to place the child as a ward of the State under the care and supervision of the State Board of Public Welfare. In no sense are the contemplated proceedings defined to be criminal. They are generally held to be civil in nature. This provision of sec. 1909 has no relation to criminal prosecutions. Sec. 1918, which deals with children who cannot be properly disciplined under the juvenile statute, provides that each such child shall "be proceeded against as if he were over the age of eighteen years."

In the case at bar the accused was represented by an attorney selected by him, who appeared and defended him at every stage of the proceedings.

The next error assigned is that the trial court erred in trying the accused without a jury. After the accused was arraigned, the record discloses the following:

"By the court: On a plea of 'Not guilty' the law gives you the right to waive the jury and your counsel advised me, a week ago, that you would do so, but that is a personal privilege of yours which you have to state in open court of your own free will. Now when you do waive the jury, then it has to be with the consent of the Commonwealth's attorney and the court, and, further, you have to be advised by your counsel as to that matter and have you been advised by your counsel as to waiving the jury?.

"By the defendant: I waive the jury.

"By the court: And it is your desire that the court hear and determine this case without a jury?

"By the defendant: Yes, sir.

"By the court: Mr. Commonwealth's Attorney, do you concur?

"By the commonwealth: Yes, sir.

"By the court: And the court concurs and the record will show that the defendant in court waives the jury, after being advised by his counsel, the Commonwealth's attorney, and the court concur.

"Take your seat."

. Sec. 8 of the Constitution provides as follows: "In criminal cases, the accused may plead guilty; and, if the accused plead not guilty, with his consent and the concurrence of the Commonwealth's attorney and of the court entered of record, he may be tried by a smaller number of jurors, or waive a jury. In case of such waiver, or plea of guilty, the court shall try the case."

A minor charged with a crime has just as much right to waive a trial by jury as an adult. It appears that the court fully explained to the accused and to his counsel the rights of the accused, and that the accused, with the advice of his counsel, deliberately determined to waive a jury and submit his case to the court. The pertinent language of the Constitution is mandatory. It provides: "In case of such waiver, * * * , the Court *shall try* the case." (Italics supplied.) See *Hobson* v. *Youell*, 177 Va. 906, 15 S. E. (2d) 76; *Dixon* v. *Commonwealth*, 161 Va. 1098, 172 S. E. 277.

It is contended that the court erred in refusing to grant a motion for continuance.

The accused was arrested on the 25th day of November. When the indictment was returned on the 2nd day of December, Oliver W. Hill, a negro lawyer from Richmond, appeared for the accused and requested time in which to prepare the defense. The court, at his suggestion, set the trial for December 19th. On that day the same attorney again moved for a continuance on the ground that he had had insufficient time to prepare for trial and that he desired to call as a witness a doctor who was not present. The record discloses that, in the discussion of this motion, the attorney for the accused failed or declined to give the court the name of the doctor or

.to state what the doctor would say if he were present. Both the attorney for the Commonwealth and the court suggested that the doctor's testimony or its substance should be submitted to the court for inspection in order to intelligently pass upon the motion. This was not done. In overruling the motion for a continuance, the court said: "This crime was alleged to have been committed on either the 24th or 25th of November. The grand jury was convened on the 2nd day of December, and, at that time, I stated to you that the case would have to be disposed of at the December term of the court and I would permit you to fix your own date and you did fix the 19th, which is today. The grounds that you have assigned are not grounds that the law recognizes for continuance."

It appears that the trial judge was extremely careful to give the accused full opportunity to prepare his defense. He permitted the confession of the accused to be introduced in evidence only after the court was satisfied by the testimony of several witnesses that the confession was voluntarily made. After the Commonwealth had established the guilt of the accused beyond all question, Dr. G. B. Arnold, superintendent of the State Colony for Feebleminded and Epileptic at Lynchburg, and Dr. J. S. DeJarnette, superintendent of the Western State Hospital at Staunton, were called as witnesses. These experts on mental diseases testified that the accused had sufficient intelligence to know "right from wrong and the power to choose good and avoid evil."

The dominant argument advanced for the accused is that he, a negro boy in his sixteenth year, has been sentenced to death for a felonious attack on a white woman.

 The statute heretofore cited clearly reveals the legislative intent to leave the prosecution and punishment of a minor between 12 and 18 years of age for an aggravated offense to the discretion of a jury or of a court trying the case without a jury. If the evidence in such case establishes the aggravated nature of a felony,

then the *quantum* of punishment must be within the limits fixed by statute for the particular crime. When this discretion has been exercised by the lower court, this court has no authority to substitute its judgment therefor.

The facts in the case under consideration are that a young married woman and a mother of a six-months-old child was returning from the movie to her home about 11:00 p. m. While walking along the street near the Lutheran church in Waynesboro, she was seized from the rear and her glasses broken. She tried to scream but a hand was thrown over her mouth. She was dragged to the rear of a vacant lot. Her hose and dress were torn to shreds. She struggled with all her might and, in the conflict, scratched her assailant in the face and mouth and blackened his eye. Notwithstanding this vigorous attempt to defend herself, she was overpowered. The crime was both heinous and aggravated to the nth degree. The account of the commission of the crime reveals that, regardless of the age or weight of the accused, his physical strength was sufficient to overcome that of a vigorous young woman.

The evidence further disclosed that the accused had been found guilty of stealing on three separate and distinct occasions. The trial court saw the victim and her assailant at the time they gave their testimony. After due and careful consideration of all matters brought to the attention of the trial court, it decided, in the exercise of its discretion, that the peace and good order of the Commonwealth required the imposition of the extreme penalty upon the accused. We find no reversible error in the trial or in the decision of the trial judge. The judgment is

*Affirmed.*