# 𝔖taunton

DAVID LEE CRADLE v. C. C. PEYTON, SUPERINTENDENT, ETC.

September 8, 1967.

Record No. 6429.

Present, All the Justices.

*Albert Teich, Jr.,* for plaintiff in error.

*W. Luke Witt, Assistant Attorney General (Robert Y. Button, Attorney General; Reno S. Harp, III, Assistant Attorney General,* on brief), for defendant in error.

GORDON, J., delivered the opinion of the court.

In 1962 David Lee Cradle, age seventeen, was brought before the Juvenile and Domestic Relations Court of the City of Norfolk for a hearing on two charges of armed robbery. Cradle was not represented by counsel at the hearing, nor was he told that counsel would be appointed if he could not afford to retain counsel. After the hearing the juvenile court certified Cradle to the Corporation Court of the City of Norfolk for trial as an adult on both charges. Va. Code Ann. § 16.1-176 (Repl. vol. 1960).

The grand jury returned an indictment against Cradle on each charge of armed robbery. The corporation court then appointed counsel to represent Cradle at his trial and, after hearing evidence, convicted Cradle on guilty pleas to the indictments and sentenced him to two consecutive terms of eight years each.

Cradle challenged the corporation court's conviction order by a habeas corpus petition filed in that court in 1965. He appeals from the court's order of January 11, 1966 denying the writ after a plenary hearing.

I

[1] On May 15, 1967, after oral argument of this appeal, the Supreme Court handed down *Application of Gault*, 387 U.S. 1, 87 S.Ct. 1428, 18 L.ed.2d 527 (1967), holding that detention by juvenile court order of a person who was not afforded the right to counsel in the juvenile court proceedings contravenes due process.[1] The most

---

1. Before the *Gault* decision the Supreme Court had not passed on the question whether the Sixth Amendment right to assistance of counsel, as applied to the states through the due process clause of the Fourteenth Amendment, extended to juvenile court proceedings. The Court in an earlier case, *Kent v. United States,* 383 U.S. 541,

serious question now before us is whether *Gault* controls the decision of this case.

Gerald Gault, age fifteen, was picked up at his home on June 8, 1964, on the basis of a complaint that he had made lewd remarks to a woman by telephone. The sheriff who picked him up left no notice for the parents, who were away at work, but that night they learned Gerald was in custody and a hearing would be held in the juvenile court on June 9. On the day of the hearing a police officer filed a petition with the juvenile court, reciting only that Gerald was under eighteen years of age, in need of the protection of the court, and a delinquent minor.

Neither Gerald nor his parents were advised of his right to counsel, retained or court-appointed, and Gerald was not represented by counsel at the hearing. The court heard the evidence, comprised only of hearsay testimony about Gerald's lewd remarks over the telephone and of Gerald's admissions in his answers to questions put by the court. The court found Gerald was a "delinquent child" and ordered him committed to the State Detention Home during his minority, a period of about six years. (Had Gerald been an adult the maximum punishment that could have been imposed under Arizona law for making the lewd remarks was $50 or two months imprisonment.)

No appeal being available under Arizona law, Gerald's parents brought state habeas corpus proceedings. The state courts denied habeas corpus, but the Supreme Court reversed. It held the due process clause of the Fourteenth Amendment violated because: (1) neither Gerald nor his parents were given "timely notice, in advance of the hearing, of the specific issues . . . [to be determined at the hearing]" (*id*. at 34, 87 S.Ct. at 1447, 18 L.ed.2d at 550); (2) neither Gerald nor his parents were "notified of the child's right to be represented by counsel retained by them, or if they . . . [were] unable to afford counsel, that counsel . . . [would] be appointed to represent the child" (*id*. at 41, 87 S.Ct. at 1451, 18 L.ed.2d at 554); (3) Gerald was denied the right of confrontation and cross-examination, in that evidence of the alleged lewd remarks was not given by the woman to whom they were supposedly made, but by hearsay testimony of a police officer who had talked to the woman; and (4) the juvenile court elicited a confession from Gerald at the hearing without any

---

86 S.Ct. 1045, 16 L.ed.2d 84 (1966), had upheld the right to assistance of counsel in juvenile court proceedings. But the Court's decision in that case turned on the procedural requirements of the Juvenile Court Act of the District of Columbia, not on the right to assistance of counsel under the Sixth Amendment.

warning "that he was not obliged to speak and would not be penalized for remaining silent." *Id.* at 44, 87 S.Ct. at 1452, 18 L.ed.2d at 555.

## A

The holding in the Gault case does not control our decision of this case because of the significant difference between a confinement order and a certification order. A confinement order imposes a sentence of confinement in an institution ("however euphemistic the title, a 'receiving home' or an 'industrial school' for juveniles is an institution of confinement in which the child is incarcerated for a greater or lesser time". *Application of Gault, id.* at 27, 87 S.Ct. at 1443, 18 L.ed.2d at 546). A certification order transfers the case to another court for original determination whether the accused child shall be confined.

The Supreme Court held Gault's confinement under order of the Arizona juvenile court constitutionally invalid because the order denied Gault his liberty without due process. Cradle is not confined under a juvenile court order. The Virginia juvenile court made no finding of Cradle's innocence or guilt, only a finding that he should stand trial on the merits in another court. It therefore certified Cradle for trial as an adult in the court having jurisdiction to try the charges against him, the Corporation Court of the City of Norfolk.

The intent of the *Gault* opinion, as we read it, is to forbid *confinement* under juvenile court order without due process. At first glance the Court may appear to have relied upon its recent decision in *Kent* v. *United States, supra* n.1, a certification case that upheld the right to assistance of counsel in juvenile court proceedings. But the Court had declined to decide the *Kent* case on constitutional grounds, saying: "The Juvenile Court Act and the decisions of the United States Court of Appeals for the District of Columbia Circuit[2] provide an adequate basis for decision of this case, and we go no further." *Id.* at 556, 86 S.Ct. at 1055, 16 L.ed.2d at 94. So we take the references to *Kent* in *Gault* as intended to describe the development of statutory law respecting right to counsel in juvenile court proceedings; not as intended to extend the *Kent* decision beyond what

---

2. E.g., *Black* v. *United States*, 355 F.2d 104 (D.C. Cir. 1965) (a certification case, "construing . . . [a District of Columbia] Act as providing a right to appointed counsel and to be informed of that right"). *Application of Gault*, 387 U.S. 1, 37, 87 S.Ct. 1428, 1449, 18 L.ed.2d 527, 552, n. 63 (1967).

it originally stood for. And we believe the *Gault* opinion as a whole reflects the Court's intention to deal only with the case before it; to leave open the question whether the same constitutional rules should be made applicable to certification cases.

The Juvenile and Domestic Relations Court of the City of Norfolk found that the evidence adduced at the hearing showed probable cause to believe Cradle had committed felonies. After receipt of the probation officer's report concerning Cradle's physical, mental and social condition and personality, the juvenile court determined that he should be tried as an adult—that is, he should stand trial on the merits in another court, if indicted by a grand jury. We find no denial of federal due process in the court's making those determinations without first appointing counsel to represent Cradle.

## B

[2]   Even if the *Gault* opinion should be interpreted as making no distinction between confinement orders and certification orders, we believe the new constitutional standards laid down in *Gault* should be given only prospective effect.[3] See *Stovall* v. *Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.ed.2d 1199 (1967); *Johnson* v. *New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.ed.2d 882 (1966); *Tehan* v. *Shott*, 382 U.S. 406, 86 S.Ct. 459, 15 L.ed.2d 453 (1966); *Linkletter* v. *Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.ed.2d 601 (1965).

The Court in *Stovall* v. *Denno, supra,* as a summary of the rules of *Johnson, Tehan* and *Linkletter,* set forth the following criteria for determining whether a decision should be retroactive or given only prospective effect: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." *Id.* at 297, 87 S.Ct. at 1970, 18 L.ed.2d at 1203. Application of these criteria to the new standards set forth in *Gault* demonstrates that the standards should be given only prospective effect.

In *Stovall* the Court held that the new standards laid down in *United States* v. *Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.ed.2d 1149 (1967), and *Gilbert* v. *California,* 388 U.S. 263, 87 S.Ct.1951, 18 L.ed.2d 1178 (1967)—that the Sixth Amendment requires exclusion

---

3. Juvenile courts must of course observe the *Gault* rules in all future proceedings that may result in confinement because a court cannot know before the hearing whether it will retain jurisdiction or certify.

of identification evidence tainted by exhibiting the accused to identify-
ing witnesses before trial in the absence of his counsel—should be
given only prospective effect. The purpose to be served by the *Wade*
and *Gilbert* rules, as described in the *Stovall* opinion, was:

> "The presence of counsel will significantly promote fairness at the
> confrontation and a full hearing at trial on the issue of identifica-
> tion. We have, therefore, concluded that the confrontation is a
> 'critical stage,' and that counsel is required at all confrontations."
> 388 U.S. at 298, 87 S.Ct. at 1971, 18 L.ed.2d at 1204 (1967).

The *Gault* rules also have the purpose of promoting full and fair
hearings.

In concluding that the intended purpose of the *Wade* and *Gilbert*
rules would be better served by giving them only prospective appli-
cation, the Court said in *Stovall*:

> "It must be recognized, however, that, unlike cases in which coun-
> sel is absent at trial or on appeal, it may confidently be assumed
> that confrontations for identification can be and often have been
> conducted in the absence of counsel with scrupulous fairness and
> without prejudice to the accused at trial." *Id*. at 298-299, 87 S.Ct. at
> 1971, 18 L.ed.2d at 1204.

Juvenile court proceedings that result in confinement may be deemed
the equivalent of trials. Nonetheless we believe that in the vast ma-
jority of juvenile cases conducted in the absence of counsel, proceed-
ings have been scrupulously fair and without prejudice to the accused.
We base this belief in large measure upon our conviction that ju-
venile court judges have conscientiously endeavored to carry out
state policy of making the welfare of the child the paramount con-
sideration.

Turning to the second criterion, we find that Virginia, like all
other states of the union, had assumed for many years before the
*Gault* decision that juvenile laws reflecting the *"parens patriae"* con-
cept of juvenile justice were constitutionally adequate. Under this
concept the juvenile court judge acts for the state *"in loco parentis*
for the purpose of protecting the property interests and the person
of the child." *Application of Gault*, 387 U.S. at 16, 87 S.Ct. at 1438,
18 L.ed.2d at 540 (1967). The generally accepted premises for the

treatment of juveniles, formulated by early reformers of the ancient practice of treating adult and child alike in criminal trials, were described by the Supreme Court in the *Gault* opinion:

"The child—essentially good, as they saw it—was to be made 'to feel that he is the object of [the State's] care and solicitude,' not that he was under arrest or on trial. The rules of criminal procedure were therefore altogether inapplicable. The apparent rigidities, technicalities, and harshness which they observed in both substantive and procedural criminal law were therefore to be discarded. The idea of crime and punishment was to be abandoned. The child was to be 'treated' and 'rehabilitated' and the procedures, from apprehension through institutionalization, were to be 'clinical' rather than punitive." *Id.* at 15-16, 87 S.Ct. at 1437, 18 L.ed.2d at 539.

The *Gault* decision requires a change in this concept of juvenile proceedings as non-criminal, a change from procedures (however inadequate to meet constitutional tests as now understood) that were founded on honest concern for the welfare of the child. For example, *Gault* changes the juvenile's statutory right to be represented by a probation officer or counsel as guardian ad litem if the parent or guardian is not present (Va. Code Ann. § 16.1-173 (Supp. 1966)) to a Sixth Amendment right to counsel.[4] In view of the justifiable reliance on the old system by the states and their law enforcement authorities, we believe public interest dictates that the change be prospective only.

Applying the last criterion, we conclude that retroactive application of the *Gault* standards would have a seriously adverse effect on

---

4. Code § 19.1-241.1, enacted in 1964 (after Cradle's trial) and amended in 1966, provides in part:

"In any case in which a person is charged with a felony and appears for any hearing before any court without being represented by counsel, such court shall, before proceeding with the hearing, appoint an attorney at law to represent him and provide such person legal representation throughout every stage of proceeding against him." Va. Code Ann. § 19.1-241.1 (Supp. 1966).

A federal court has indicated by dictum that Code § 19.1-241.1 is not declaratory of a constitutional right, insofar as it applies to preliminary hearings for adults accused of felonies: "a failure to observe its provisions would not necessarily mean that the petitioner's rights under the Constitution of the United States had been violated." *Moon* v. *Peyton*, 257 F.Supp. 998, 1001 (E.D. Va. 1966). We need not decide whether Code § 19.1-241.1, which is not part of the Juvenile and Domestic Relations Court Law (Code §§ 16.1-139 through -217), is applicable to hearings in juvenile courts.

the administration of justice. The Court's statements in *Stovall* v. *Denno, supra,* are pertinent here:

"In *Tehan* v. *Shott, supra,* we thought it persuasive against retro-active application of the no-comment rule of *Griffin* v. *California,* 380 U.S. 609, that such application would have a serious impact on the six States that allowed comment on an accused's failure to take the stand. We said, 'To require all of those States now to void the conviction of every person who did not testify at his trial would have an impact on the administration of their criminal law so devastating as to need no elaboration.' 382 U.S., at 419. That impact is insignificant compared to the impact to be expected from retroactivity of the *Wade* and *Gilbert* rules. At the very least, the processing of current criminal calendars would be disrupted while hearings were conducted to determine taint, if any, in identifica-tion evidence, and whether in any event the admission of the evi-dence was harmless error. Doubtless, too, inquiry would be handi-capped by the unavailability of witnesses and dim memories. We conclude, therefore, that the *Wade* and *Gilbert* rules should not be made retroactive." 388 U.S. at 300, 87 S.Ct. at 1971, 18 L.ed.2d at 1205 (1967).

Retroactivity of the *Gault* rules would have an equally devastating impact on the administration of criminal law. Every state would be required to void the conviction of every juvenile who was not ad-vised of his right to be represented in juvenile court proceedings by retained counsel or, if unable to afford counsel, by court-appointed counsel. Already crowded court calendars would be further bur-dened by habeas corpus proceedings and, where habeas corpus is successful, by retrials. Inquiry would be handicapped by the un-availability of witnesses, by dim memories, and by the inadequacy or unavailability of juvenile court records.[5]

## II

[3]   We now consider whether the due process clause of Section

---

5. A Virginia statute requires juvenile courts to keep dockets, order books or files for the entries of their orders. Va. Code Ann. § 16.1-162 (Repl. vol. 1960). But records kept by juvenile courts are not comparable to those of courts of record. Furthermore, juvenile courts are authorized to destroy the files, papers and records connected with any case after the juvenile has attained age twenty-one or the period of five years has elapsed since disposition of the case. Va. Code Ann. § 16.1-193 (Repl. vol. 1960).

8 of the Constitution of Virginia, reading "He [the accused] shall not be deprived of life or liberty, except by the law of the land or the judgment of his peers", requires that juveniles be advised of their right to counsel, retained or court-appointed, in juvenile court proceedings. We have held that this clause impliedly guarantees the right to counsel in felony trials. See, *e.g.*, *Watkins* v. *Commonwealth*, 174 Va. 518, 6 S.E.2d 670 (1940). But for reasons to be given we hold that it does not provide such a right in juvenile court proceedings.

As evidenced by the juvenile court statutes in effect since 1910, Virginia adhered to the *"parens patriae"* concept of justice for juveniles, a concept discussed in section I of this opinion. Juvenile court proceedings were not regarded as criminal trials. They were regarded either as custodial proceedings to determine the need for treatment and rehabilitation of the juvenile or as investigatory proceedings to determine whether a juvenile should be tried in another court for an aggravated offense. See *Mickens* v. *Commonwealth*, 178 Va. 273, 16 S.E.2d 641 (1941).

In 1910 the General Assembly enacted a statute providing for the appointment of a probation officer to represent the juvenile's interests in juvenile court proceedings. Va. Acts of Assembly 1910, ch. 289, at 434, 435. In 1922 the statute was changed to provide for the appointment of a probation officer *or* an attorney at law as guardian ad litem for the juvenile, if a parent or guardian did not attend the juvenile court hearing. Va. Acts of Assembly 1922, ch. 481, at 822. The Virginia statute in effect when Cradle was tried also permitted the appointment of a probation officer instead of an attorney as guardian ad litem, if a parent or guardian did not attend the hearing. Va. Code Ann. § 16.1-173 (Supp. 1966).

Section 8 of the Constitution of Virginia was amended and reenacted as part of the general constitutional revision in 1928 and has not been changed since 1928. Before 1928 the General Assembly did not interpret the due process clause of section 8 as requiring assistance of counsel in juvenile court proceedings. As already pointed out the General Assembly enacted a statute in 1910 permitting representation of juveniles by a probation officer; and it enacted a statute in 1922, which was still in effect in 1928, permitting representation of juveniles by a parent or guardian or, if neither was present at the hearing, by a probation officer as guardian ad litem.

In 1928 the General Assembly proposed no change in the existing

language of the due process clause of section 8, and no such change appeared in the constitutional amendment as adopted. After 1928 the General Assembly continued the statutory permission for representation of juveniles by a parent or guardian or by a probation officer.

No intent to require representation by counsel in juvenile court proceedings should therefore be inferred from the due process clause of section 8. See *Roanoke* v. *Michael's Bakery Corp.*, 180 Va. 132, 21 S.E.2d 788 (1942). The General Assembly's practical construction of section 8, by continuing the statutory permission for the representation of juveniles by a parent or guardian or by a probation officer, confirms the absence of any such intent. See *id.*

### III

We will dispose of the three remaining assignments of error in this section.

[4]   On the night of Cradle's arrest he made written confessions that he had committed the robberies with which he was charged. Counsel contends that these confessions were coerced by the police in violation of Cradle's "rights under the Fourteenth Amendment to the United States Constitution".

The trial court in this proceeding (the "habeas court") found that before the confessions were made "he [Cradle] was informed of his rights, in that he, the Petitioner, did not have to make any statement, and that if he did make a statement that it could be used for or against him in Court, and further that if he made such statement, that he could have anyone present he wanted". The habeas court also found that the police used no threat, physical force or promise to prompt the confessions. The evidence, though conflicting, supports these findings.

We hold that the confessions meet the test of voluntariness in effect before *Miranda* v. *Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.ed.2d 694 (1966). The *Miranda* rules are not applicable because Cradle was tried before June 13, 1966. *Johnson* v. *New Jersey*, 384 U.S. 719, 86 S.Ct. 1772, 16 L.ed.2d 882 (1966). Even if the new rule laid down in *Gault* respecting admissions by juveniles would make Cradle's confessions constitutionally involuntary, we find the *Gault*

rule inapplicable for the reasons set forth in section IB of this opinion.[6]

[5] Next, counsel contends that the notification requirement of Code § 16.1-172 was not complied with in Cradle's case.[7] The record shows that Cradle, the illegitimate son of a deceased mother and an unknown father, lived with his grandmother. Counsel contends that the grandmother acted in place of Cradle's parents within the meaning of Code § 16.1-172 and that this section was not complied with because she was not given notice of the hearing before the juvenile court. She did not attend the hearing and, as stated (n.7, *supra*), the court appointed a probation officer as guardian ad litem.

Accepting counsel's contention that the grandmother was acting in the place of Cradle's parents, we hold that she was given the notice required under Code § 16.1-172. The habeas court found that when Cradle was arrested, a police officer told the grandmother "he was charged with committing Robbery and would be charged with the offense and brought to trial", and he "told her to be in Juvenile and Domestic Relations Court at 10:00 o'clock the next morning." The evidence supports that finding.

The notice given to Cradle and his grandmother apparently would not comply with the new rule laid down in *Gault*; but for the reasons set forth in section I of this opinion, we find the *Gault* rule inapplicable to Cradle's case.

[6] Lastly, counsel contends that Cradle was denied effective assistance of counsel at his trial in the Corporation Court of the City

---

6. Gault's admissions were made in answers to questions put by the juvenile court, whereas Cradle's confessions were made in the police station. Cradle did admit, in an answer to a question by the juvenile court, that he bought a jacket and shoes with the money that had been stolen. But there is no indication that this admission was introduced at the trial on his guilty pleas to the indictments.

7. "§ 16.1-172. Notice to parents or person or agency acting in place of parents.—In no case shall the hearing proceed until the parent or parents of the child, if residing within the State, or person or agency acting in place of parents in case the parents have theretofore been legally deprived of custody of the child, have been notified, unless the judge shall certify on his record that diligent efforts have been made to locate and notify the parent or parents without avail, or unless the court shall certify that no useful purpose would be served thereby because of the conditions set out in § 16.1-166." Va. Code Ann. § 16.1-172 (Repl. vol. 1960).

Code § 16.1-173 provides that the court shall appoint a probation officer or an attorney at law as guardian ad litem to represent the juvenile's interests at the hearing, if no person required to be notified under Code § 16.1-172 is present at the hearing. Va. Code Ann. § 16.1-173 (Supp. 1966). No person required to be notified appeared, so the juvenile court appointed a probation officer as guardian ad litem for Cradle.

of Norfolk on the indictments for armed robbery. The habeas court held that Cradle "had effective and competent counsel". It found that:

(1) Counsel was appointed one month before the trial.

(2) Counsel conferred with his client before the date of the trial, the first occasion being three days after he was appointed.

(3) Counsel "explained the seriousness of the offenses and possibilities of punishment".

(4) Cradle advised counsel of his signed confessions, told him that no threat or promise was made by the police in order to obtain the confessions, and told him nothing "that would lead the attorney to have any doubts or to question the voluntariness of the confession[s]".

(5) Counsel advised Cradle "concerning his rights to plead 'guilty' or 'not guilty', . . . [and] of his right to a trial by Judge or jury".

(6) There was no indication Cradle was insane. He was of low intelligence and had suffered from a nervous disorder, but told counsel the day before the trial "he had no nervous problem at this time".

(7) Cradle entered pleas of guilty at his trial.

Because the evidence supports these findings we reject the contention that Cradle had ineffective assistance of counsel at his trial on the indictments.

*Affirmed.*

EGGLESTON, C.J., dissenting.

The critical question presented on this appeal is whether a 17-year-old boy charged with armed robbery, a capital offense (Code § 18.1-91 [Repl. Vol. 1960]), is entitled to counsel at a hearing in the Juvenile and Domestic Relations Court where he is certified to a criminal court for trial as an adult under Code § 16.1-176 [Repl. Vol. 1960]. The majority opinion holds that he is not. Believing that the due process clauses of the Fourteenth Amendment to the Federal Constitution and Section 8 of the Constitution of Virginia guarantee such right, I dissent.

In my view, the recent decision of the Supreme Court of the

United States in *Application of Gault*, 387 U. S. 1, 87 S. Ct. 1428, 18 L. ed. 2d 527 (1967), and the earlier decision of *Kent* v. *United States*, 383 U. S. 541, 86 S. Ct. 1045, 16 L. ed. 2d 84 (1966), clearly point to the conclusion that such a right is guaranteed to a juvenile under the due process clause of the Fourteenth Amendment.

The Juvenile Court Act of the District of Columbia provides:

> "If a child sixteen years of age or older is charged with an offense which would amount to a felony in the case of an adult, or any child charged with an offense which if committed by an adult is punishable by death or life imprisonment, the judge may, after full investigation, waive jurisdiction and order such child held for trial under the regular procedure of the court which would have jurisdiction of such offense if committed by an adult; * * *." [1]

The material portion of our statute (Code § 16.1-176), dealing with the same subject, provides:

> "(a) If a child fourteen years of age or over is charged with an offense which, if committed by an adult, could be punishable by confinement in the penitentiary the court after an investigation as prescribed in paragraph (b) of this section, and hearing thereon may, in its discretion, retain jurisdiction or certify such child for proper criminal proceedings to the appropriate court of record having criminal jurisdiction of such offenses if committed by an adult; * * *."

It will be observed that the two statutes are substantially the same. While a proceeding under the District of Columbia statute is spoken of as a *waiver* proceeding, a proceeding under our statute is referred to as a *certification* proceeding.

In the *Kent* case the Supreme Court of the United States held that an order of the District of Columbia Juvenile Court waiving its jurisdiction over and transferring a 16-year-old boy for trial to a criminal court, without a hearing and *without effective assistance of counsel* was invalid and not permitted by the statute. 383 U. S. at 552, 553, 86 S. Ct. at 1053. In reaching that conclusion the Supreme Court expressly approved the holding in *Black* v. *United States*, 122 U.S. App. D. C. 393, 355 F. 2d 104 (1965), that a proceeding in the Dis-

---

[1] D.C. Code § 11-914 (1961), now § 11-1553 (Supp. IV, 1965).

trict Juvenile Court to determine whether the latter court should, after a full investigation, waive jurisdiction over a juvenile and transfer him to the criminal processes of the District Court was a "critically important" one and was invalid *if the juvenile was not advised of his right to either retained or appointed counsel.* 383 U. S. at 560-562, 86 S. Ct. at 1057.

Furthermore, it was said in the *Kent* opinion: "[T]here is no place in our system of law for reaching a result of such tremendous consequences without ceremony—without hearing, *without effective assistance of counsel,* without a statement of reasons;"[2] that "the waiver of jurisdiction is a *'critically important'* action determining vitally important statutory rights of the juvenile."[3] (Emphasis added.)

In *Application of Gault, supra,* the Supreme Court said of its holding in the *Kent* case: "Although our decision turned upon the language of the statute, we *emphasized the necessity that 'the basic requirements of due process and fairness' be satisfied in such proceedings;'* that this and other cases "unmistakably indicate that, whatever may be their precise impact, *neither the Fourteenth Amendment nor the Bill of Rights is for adults alone."* 387 U. S. at 12-13, 87 S. Ct. at 1436. (Emphasis added.)

Since a waiver proceeding under the District of Columbia statute is so similar to a certification proceeding under the Virginia statute, it is clear that what the Supreme Court of the United States has said about the constitutional requirements under the District of Columbia statute is equally applicable to our statute.

In the *Gault* case, which likewise dealt with the right to counsel in a hearing in a juvenile and domestic relations court, it was said: "We conclude that the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to *determine delinquency which may result in commitment* to an institution in which the juvenile's freedom is curtailed, the child and his parent must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child." 387 U. S. at 41, 87 S. Ct. at 1451. (Emphasis added.)

It is true that in the *Gault* case the court was concerned with the validity of a judgment which had committed a child to an institution for a period of several years, while in the present case we are con-

[2]383 U. S. at 554, 86 S. Ct. at 1053.
[3]383 U. S. at 556, 86 S. Ct. at 1055.

cerned with the validity of an order which has certified a child to a criminal court to be tried as an adult. But under our statute the proceedings in the juvenile court "may result" in such commitment (Code, § 16.1-178) and hence are clearly within the purview of the holding in the *Gault* case.

Moreover, it would be most illogical to say in the present case that before this boy could lawfully be *committed* to the custody of juvenile authorities he should have had counsel, as is held in the *Gault* case, yet where the proceedings took a more serious turn and he was *certified* to a criminal court to be put on trial for his life, he was not entitled to counsel.

Nor do I agree with the view that even if the principles announced in the *Gault* opinion are applicable here, they "should be given only prospective effect." Surely the Supreme Court of the United States and not this court is the tribunal which should decide whether its decision in the *Gault* case should be applied only prospectively. Certainly, without such limitation it must be construed to operate both retroactively and prospectively.

The majority opinion expresses the belief or hope that in the future the Supreme Court will indicate such limitation on its holding in the *Gault* case. Two years passed before it decided in *Johnson* v. *State of New Jersey*, 384 U. S. 719, 86 S. Ct. 1772, 16 L. ed. 2d 882 (1966), that its holding in *Escobedo* v. *State of Illinois*, 378 U. S. 478, 84 S. Ct. 1758, 12 L. ed. 2d 977 (1964), should not be applied retroactively. If we should wait for a similar limitation on the effect of the *Gault* decision, what is to become in the meantime of petitioner's claim that he is being illegally detained under a void judgment?

In the present appeal the reasoning of the majority opinion seems to run thus: The precise issues decided in the *Gault* and *Kent* cases are not identical with those involved in the case before us and the principles there announced should not be applied here unless and until the mandate of the Supreme Court of the United States requires us to do so; in the meantime we should avoid their application by holding that the principles announced in those decisions should be applied only prospectively.

Such reasoning is contrary to my conception as to how the decisions of the Supreme Court of the United States should be accepted and applied by the highest court in Virginia. Since the days of Chief Justice Marshall, the Supreme Court of Appeals of Virginia has recognized that the interpretation which the Supreme Court of the

United States has placed upon the Federal Constitution is binding on state courts regardless of whether the latter courts approve of such interpretation.[4] I think that when a fair reading of an opinion of the Supreme Court of the United States requires that the principles there announced be applied to a situation before us, we should apply them and not wait until we are forced to do so by the mandate of that court in that particular case.

It is my view that under the principles clearly laid down in the *Gault* and *Kent* cases, this 17-year-old boy whose case is now before us, or his grandmother who stood in the relation of a parent to him, should have been notified of the boy's right to be represented by counsel at the hearing before the juvenile court, and if they were unable to afford counsel, of his right to have counsel appointed to represent him. Because that was not done, the proceeding against the boy in the juvenile court was void for want of due process guaranteed to him under the Fourteenth Amendment, and the subsequent indictment and his conviction were void. *Peyton* v. *French*, 207 Va. 73, 80, 147 S. E. 2d 739, 743.

Furthermore, aside from the holdings in the *Gault* and *Kent* cases, I think that under the due process clause of the Virginia Bill of Rights (Constitution, § 8) this boy was entitled to counsel at the hearing in the juvenile court and should have been so notified. We have several times held that this section of the Virginia Constitution guarantees to an accused the right to counsel at his trial. *Watkins* v. *Commonwealth*, 174 Va. 518, 522, 6 S. E. 2d 670, 671; *Fitzgerald* v. *Smyth*, 194 Va. 681, 690, 74 S. E. 2d 810, 816; *Morris* v. *Smyth*, 202 Va. 832, 833, 120 S. E. 2d 465, 466.

In the present case this 17-year-old boy was charged with a capital offense. At the proceeding in the juvenile court it was to be determined whether he should be kept under the protection of the authorities charged with the care and custody of delinquent children or certified to the criminal court for trial as an adult. This was no mere preliminary hearing such as is accorded to an adult charged with the commission of a felony. Code § 19.1-163.1 [Repl. Vol. 1960]. It was a jurisdictional requirement in the proceeding against this boy. *Peyton* v. *French, supra*, 207 Va. at 80, 147 S. E. 2d at 743. In the words of the Supreme Court in the *Kent* case (383 U. S. at 560, 86 S. Ct. at 1057), this was "indeed, a 'critically important' proceeding" and one in which he needed the guidance and assistance of counsel.

---

[4]*Martin* v. *Hunter's Lessee*, 1 Wheat. 304, 14 U. S. 304, 4 L. ed. 97 (1816).

I would reverse the judgment appealed from, grant the writ of habeas corpus, and remand the petitioner, who is now an adult, for a new trial in the manner prescribed in *Peyton* v. *French, supra,* 207 Va. at 80, 147 S. E. 2d at 743, 744.

I'ANSON, J., dissenting in part, concurring in part and in the result.

I do not agree with that part of the majority opinion which holds that Cradle was not entitled to the right of assistance of counsel at his hearing in the juvenile court.

The majority opinion holds that Cradle was not entitled to assistance of court-appointed counsel in the juvenile court because he was certified for trial in the Corporation Court of the City of Norfolk as an adult on the robbery charges and is being held pursuant to the sentences imposed in the latter court. In reaching this conclusion, the opinion draws a distinction between a certification order and a commitment order. I do not think the distinction can be relied upon as a basis for holding that Cradle was not entitled to the right of assistance of counsel under the new constitutional rules of criminal procedure handed down by the United States Supreme Court in the recent cases of *Application of Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L. ed. 2d 527 (1967), and *Kent* v. *United States,* 383 U. S. 541, 86 S. Ct. 1045, 16 L. ed. 2d 84 (1966).

*Gault* held that the due process clause of the Fourteenth Amendment requires that a child and his parents be notified of the child's right to retained or appointed counsel in a delinquency proceeding in a juvenile court which may result in that court's commitment of the child to an institution in which his freedom is curtailed.

*Kent* involved the construction of the District of Columbia Juvenile Court statute in a waiver proceeding which is quite similar to our statute providing for the certification of a child to the proper court of record to be tried as an adult. There the Supreme Court held that Kent was entitled to the assistance of counsel in a hearing before the juvenile court, which waived its jurisdiction and remitted the child for trial by the district court, under the provisions of the Juvenile Court Act and the decisions of the United States Court of Appeals for the District of Columbia Circuit. The Court, however, pointed out that "the basic requirements of due process and fairness" must be satisfied in such proceedings. 383 U. S. at 562, 86 S. Ct. at 1057, 16 L. ed. 2d at 98. See also, *Gault, supra,* 387 U. S. at 12, 87 S. Ct. at 1436, 18 L. ed. 2d at 538.

And, again in *Gault*, 387 U. S. at 36-37, 87 S. Ct. at 1448, 18 L. ed. 2d at 551, the Court said:

"* * * Just as in *Kent v. United States, supra,* 383 U. S. at 561-562, 86 S. Ct. at 1057-1058, we indicated our agreement with the United States Court of Appeals for the District of Columbia Circuit that the assistance of counsel is essential for purposes of waiver proceedings, so we hold now that it is equally essential for the determination of delinquency, carrying with it the awesome prospect of incarceration in a state institution until the juvenile reaches the age of 21."

I interpret what was said in *Gault* and *Kent*, when read together, to mean that the basic requirements of due process and fairness under the Fourteenth Amendment dictate that a juvenile is entitled to the assistance of retained or appointed counsel in a juvenile court hearing whether it results in a certification order or a commitment order because it is a "critical stage" of the proceeding against him.

I agree, however, with the majority opinion that the new constitutional rule of criminal procedure requiring assistance of counsel in a juvenile court hearing should not be given retroactive application in the present case.

The federal constitution does not automatically compel the retroactive application of a new constitutional rule of criminal procedure. *Stovall v. Denno,* 388 U. S. 293, 87 S. Ct. 1967, 1970, 18 L. ed. 2d 1199 (1967); *Linkletter v. Walker,* 381 U. S. 618, 85 S. Ct. 1731, 14 L. ed. 2d 601 (1965). See also, *Great Northern Ry. Co. v. Sunburst Oil & Refining Co.,* 287 U. S. 358, 363-367, 53 S. Ct. 145, 148-149, 77 L. ed. 360, 85 A. L. R. 254 (1932).

Cradle's convictions became final several years before the *Kent* and *Gault* decisions, and the proceeding before us is on habeas corpus. In *Johnson v. State of New Jersey,* 384 U. S. 719, 86 S. Ct. 1772, 1777-1778, 16 L. ed. 2d 882 (1966), the Supreme Court recognized the right of the New Jersey Supreme Court in a post-conviction proceeding[1] to determine whether a new constitutional rule shall be applied retroactively or prospectively only.

In determining the question of retroactivity or non-retroactivity of the rule, we must be guided by "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement

---

1. 43 N. J. 572, 206 A. 2d 737.

authorities on the old standards, and (c) the. effect on the administration of justice of the retroactive application of the new standards." *Stovall, supra*, 388 U.S. at 297, 87 S.Ct. at 1970, 18 L. ed. 2d at 1203.

The Court said in *Johnson, supra*, 384 U. S. at 728, 86 S. Ct. at 1778, 16 L. ed. 2d at 889:

> "* * * Each constitutional rule of criminal procedure has its own distinctive functions, its own background of precedent, and its own impact on the administration of justice, and the way in which these factors combine must inevitably vary with the dictate involved."

The right to assistance of counsel at various stages of a criminal prosecution has been given retroactive application by the Supreme Court where lack of counsel affected "the very integrity of the fact-finding process" and there was present "the clear danger of convicting the innocent." *Gideon* v. *Wainwright*, 372 U. S. 335, 83 S. Ct. 792, 9 L. ed. 2d 799 (1963) (at the time of trial itself); *Hamilton* v. *State of Alabama*, 368 U. S. 52, 82 S. Ct. 157, 7 L. ed. 2d 114 (1961) (on arraignment); *Douglas* v. *People of State of California*, 372 U. S. 353, 83 S. Ct. 814, 9 L. ed. 2d 811 (1963) (on appeal).

On the other hand, in *Johnson, supra*, 384 U. S. at 721, 86 S. Ct. at 1775, 16 L. ed. 2d at 885, the Court held that the decisions in *Escobedo* v. *State of Illinois*, 378 U. S. 478, 84 S. Ct. 1758, 12 L. ed. 2d 977 (1964), and in *Miranda* v. *State of Arizona*, 384 U. S. 436, 86 S. Ct. 1602, 16 L. ed. 2d 694, would not be applied retroactively. In those cases the lack of counsel did not directly affect the reliability of the confessions secured during the in-custody interrogations. And in *Stovall* v. *Denno, supra,* the Court held that the rules in *United States* v. *Wade*, 388 U. S. 218, 87 S. Ct. 1926, 18 L. ed. 2d 1149 (1967), and *Gilbert* v. *State of California*, 388 U. S. 263, 87 S. Ct. 1951, 18 L. ed. 2d 1178 (1967), requiring the exclusion of identification evidence which is tainted by exhibiting an accused to identifying witnesses before trial in the absence of his counsel, are not to be applied retroactively even though such confrontation is a "critical stage" of the proceedings.

In holding that the rules in *Wade* and *Gilbert, supra*, are not to be applied retroactively, the Court said:

> "* * * Although the *Wade* and *Gilbert* rules also are aimed at avoiding unfairness at the trial by enhancing the reliability of the

fact-finding process in the area of identification evidence, 'the question whether a constitutional rule of criminal procedure does or does not enhance the reliability of the fact-finding process at trial is necessarily a matter of degree.' *Johnson* v. *State of New Jersey, supra,* 384 U. S. at 728-729, 86 S. Ct. at 1778. The extent to which a condemned practice infects the integrity of the truth-determining process at trial is a 'question of probabilities.' Ibid. Such probabilities must in turn be weighed against the prior justified reliance upon the old standards and the impact of retroactivity upon the administration of justice." *Stovall* v. *Denno, supra,* 388 U. S. at 298, 87 S. Ct. at 1970, 18 L. ed. 2d at 1204.

After analyzing the recent cases of the Supreme Court relating to the right of counsel, it is clear that this right has been applied retroactively when there were substantial doubts as to the reliability of a conviction. Thus in deciding whether to apply the new constitutional rule of the right to counsel in juvenile hearings retroactively, a distinction can be drawn between a certification order and a commitment order, because in the former there is no finding of guilt while in the latter there is such a finding.

In the present case, Cradle's hearing in the juvenile court did not result in a factual finding of guilt of the offenses with which he was charged. The juvenile court judge determined Cradle's status for jurisdictional purposes and concluded from the evidence that he should be tried in the corporation court as an adult. Under our Virginia practice, the juvenile court hearing did not deprive him of his right to raise questions in defense of the charge in the corporation court. The record does not indicate that the lack of counsel had any effect on Cradle's trial and conviction in the corporation court, where he was represented by court-appointed counsel. Since there was no finding of guilt in the juvenile court, the lack of counsel did not affect the reliability of the guilt-determining process, as it did in the cases of *Gideon, Hamilton* and *Douglas, supra.*

The *Gault* and *Kent* decisions materially change the long accepted practice and procedure of dealing with juvenile offenders under the juvenile court system existing in all fifty States. The statutes of only a few States provide that a child is entitled to representation by counsel in the juvenile court because the proceeding is considered to be non-criminal. No longer is a hearing in the juvenile court considered non-criminal, and if the right to counsel is applied retro-

actively in certification cases in which there is no finding of guilt and the child is not committed to an institution by the juvenile court it will have a tremendous impact on the administration of justice.

When I weigh the little probability that an element of unfairness could have been present in Cradle's hearing in the juvenile court under the old standards against the impact upon the administration of justice by applying the new rule retroactively, I think there is ample justification for not applying retroactively the right to counsel in the present case.

Hence I agree with the majority opinion that Cradle's petition for a writ of habeas corpus should be dismissed.

SPRATLEY, J., joins in this opinion.