## Richmond

NELSON JAMES LEWIS v. COMMONWEALTH OF VIRGINIA.

August 30, 1973.

Record No. 8189.

Present, All the Justices.

*L. B. Chandler, Jr.* (*Chandler and Huff*, on brief), for plaintiff in error.

*Robert E. Shepherd, Jr., Assistant Attorney General* (*Andrew P. Miller, Attorney General*, on brief), for defendant in error.

SNEAD, C.J., delivered the opinion of the court.

On July 13, 1972, Nelson James Lewis was tried and convicted on pleas of not guilty by the trial court sitting without a jury on two counts of grand larceny and one count of statutory burglary. He was sentenced to the State Penitentiary for two years on each count for a total of six years. The facts were stipulated, and the sufficiency of the evidence is not contested.

At the time of the commission of the offenses, defendant was 17 years of age. As a result of petitions filed and after hearing evidence relating to the offenses and considering the social study, the Eighth Regional Juvenile and Domestic Relations Court of the City of Charlottesville, in accord with Code § 16.1-176.1 (1960 Repl. Vol.),[1] found and certified that it was in the public interest for the "matter" to be disposed of in that court. The juvenile court also found that "the welfare and best interests of said child requires that the State should assume his guardianship" and ordered Lewis committed to the State Department of Welfare and Institutions.

Within three days after the order of the juvenile court, the Commonwealth's Attorney, pursuant to Code § 16.1-176(a) (1960 Repl. Vol.),[2] gave notice to the juvenile court that he deemed action by a court of record necessary and thereafter presented the cases to the grand jury, which returned indictments against Lewis. Motions were made to quash the indictments on the grounds that the court lacked jurisdiction and that a trial would constitute double jeopardy. The motions were denied, and Lewis was tried as an adult in the Corporation Court of the City of Charlottesville. We granted him a writ of error to consider whether the trial court had jurisdiction to try him and whether he was denied due process of law and placed twice in jeopardy for the same offenses.

■ Lewis argues initially that Code §§ 16.1-176(a) and 176.1 were in conflict and that the trial court had no jurisdiction to try him after the juvenile court found that the "matter" should be disposed of there without certification to the court of record.

Code § 16.1-176.1 provided:

"If a juvenile sixteen years of age or over, who has been previously committed to any juvenile training school in this State or any other state, is charged with an offense which, if committed by an adult, could be punishable by death or confinement in the

1. Repealed by Acts 1973, c. 440.
2. § 16.1-176 was amended and reenacted by Acts 1973, c. 440, effective July 1, 1973.

penitentiary, the case shall be certified for proper criminal proceedings, if probable cause be found, to the appropriate court of record having jurisdiction of such offense if committed by an adult, unless the juvenile and domestic relations court shall find and shall certify in its order that it is in the public interest for the matter to be disposed of therein."

The record shows that § 16.1-176.1 was applicable to Lewis since he had been previously committed to a juvenile training school, but § 16.1-176(a) provided:

". . . [I]n the event the juvenile court does not so certify [for proper criminal proceedings] a child fourteen years of age or over, charged with an offense which, if committed by an adult, would be punishable by death or confinement in the penitentiary for life or a period of twenty years or more, the Commonwealth's attorney of the city or county, if he deems it to the public interest, may present the case to the grand jury of the proper court of record . . . . It shall be the duty of the Commonwealth's attorney to notify the juvenile and domestic relations court within three days after final adjudication if he deems action by the court of record necessary . . . . If the grand jury returns a true bill upon such indictment the jurisdiction of the juvenile court as to such case shall terminate."

The language of the statutes is plain. They should be read and considered together. In so doing, we find that §§ 16.1-176(a) and 176.1 were not mutually exclusive but were complementary and that the trial court had jurisdiction to try the cases after removal from the juvenile court.

Next, Lewis argues that § 16.1-176(a) was unconstitutional on its face as a denial of due process and that the whole proceeding is a nullity. He says that the statute enabled the Commonwealth's Attorney to make an arbitrary, judicial determination to present the case to the grand jury after the juvenile court had decided to treat Lewis as a juvenile. Lewis points out that the 1973 General Assembly recognized the inequity in the statute when it amended § 16.1-176 to require the court of record to make the final determination whether the Commonwealth's Attorney may seek an indictment against the juvenile. His argument seeks to extend to juvenile proceedings the

same due process requirements guaranteed in criminal proceedings by virtue of a trend in recent Supreme Court decisions.

Many of the requirements of procedural due process in criminal trials have been declared applicable to juvenile proceedings since *In re Gault*, 387 U.S. 1 (1967). There the Supreme Court held the "essentials of due process and fair treatment" must be followed in juvenile hearings to adjudicate delinquency. Specifically, a juvenile is entitled to adequate notice of the charge, the right to counsel, the right to confrontation and cross-examination of witnesses and the privilege against self-incrimination. *In re Winship*, 397 U.S. 358 (1970), held that proof beyond a reasonable doubt was an essential of due process and fair treatment where a juvenile is charged with an act which would be criminal if committed by an adult. *McKeiver v. Pennsylvania*, 403 U.S. 528 (1971), subsequently reaffirmed the applicable due process standard of fundamental fairness in juvenile proceedings but refused to extend the right to trial by jury to state juvenile delinquency proceedings.

We hold that the statutory procedure in § 16.1-176(a) did not violate the due process standard of fundamental fairness and was not unconstitutional on its face. After the Commonwealth's Attorney presented the cases to the grand jury, it was within the discretion of the grand jury to return true bills or not. When the grand jury returned its true bills, the trial court had the discretion to treat the juvenile offender as an adult or as a juvenile (§ 16.1-177), or to transfer the cases back to the juvenile court for disposition (§ 16.1-175).

■ Finally, Lewis contends that he was placed twice in jeopardy for the same offenses in violation of the Fifth and Fourteenth Amendments to the Constitution of the United States and Article I, Section 8 of the Constitution of Virginia. The determinative question presented is whether he was placed in jeopardy in the juvenile proceeding.

As has been noted, recent Supreme Court decisions have changed the approach the States must take to some aspects of juvenile proceedings. Virginia had adhered to the *parens patriae* concept of juvenile justice, in which juvenile proceedings were for the protection of the child and society. Such proceedings were considered of a civil nature and were not criminal. *Cradle v. Peyton*, 208 Va. 243, 251, 156 S.E.2d 874, 878 (1967), *cert. denied*, 392 U.S. 945 (1968); *Jones v. Commonwealth*, 185 Va. 335, 342, 38 S.E.2d 444, 447 (1946).

In *Cradle* we said, "[t]he *Gault* decision requires a change in this concept of juvenile proceedings as non-criminal, a change from procedures . . . that were founded on honest concern for the welfare of the child." 208 Va. at 249, 156 S.E.2d at 878. *Cradle* was decided prior to *Winship* and *McKeiver.* In light of these subsequent decisions, together with *Gault,* we do not think a complete reappraisal of Virginia's juvenile court concept is required.

*Gault* regarded proceedings to determine delinquency which might lead to commitment as "criminal" for the purposes of the privilege against self-incrimination and cast doubt on the distinction between civil delinquency hearings and criminal trials in other areas. 387 U.S. at 49-50. *Winship* also cast doubt on that distinction. 397 U.S. at 365-66. *McKeiver* added that "the juvenile court proceeding has not yet been held to be a 'criminal prosecution' . . . and also has not yet been regarded as devoid of criminal aspects merely because it usually has been given the civil label." 403 U.S. at 541. However, in *McKeiver*, the court concluded:

> "If the formalities of the criminal adjudicative process are to be superimposed upon the juvenile court system, there is little need for its separate existence. Perhaps that ultimate disillusionment will come one day, but for the moment we are disinclined to give impetus to it." 403 U. S. at 551.

We adhere to our earlier view that juvenile proceedings are civil and that jeopardy does not attach in such proceedings to bar subsequent prosecution on a grand jury indictment. *Accord, State* v. *R.E.F.,* 251 So.2d 672 (Fla.App. 1971), aff'd, 265 So.2d 701 (Fla. 1972). In so holding, we are not unmindful of the distinction made between a juvenile commitment order and a juvenile certification order in *Cradle* v. *Peyton, supra,* and *Brown* v. *Cox,* 481 F.2d 622 (4th Cir. 1973). We find, however, that Lewis was not denied the "essentials of due process and fair treatment" when his cases were removed to the court of record for a criminal trial after commitment by the juvenile court.

The convictions appealed from will be

*Affirmed.*